1              UNITED STATES DISTRICT COURT
              WESTERN DISTRICT OF ARKANSAS
2                 FAYETTEVILLE DIVISION
                                      )
3    **CHRISTOPHER KINNEY,**               )
     *INDIVIDUALLY AND ON BEHALF*      )
4    *OF ALL OTHERS SIMILARLY*         )
     *SITUATED*,                       )
5                                      ) CASE NO. 5:14-CV-05182
         Plaintiff,                   )
6                                      )
     VS.                              )
7                                      )
     DOLE PACKAGED FOODS, LLC,        )
8                                      )
         Defendant.                   )
9

10

11                  HEARING TRANSCRIPT OF

12         MOTION FOR JUDGMENT ON THE PLEADINGS

13       BEFORE THE HONORABLE TIMOTHY L. BROOKS

14            August 28, 2015; 9:04 a.m.

15               FAYETTEVILLE, ARKANSAS

16

17

18

19

20

21

22
     Proceedings recorded in realtime via machine shorthand.
23   _____

24              **Dana Hayden, CCR, RMR, CRR**
              **Federal Official Court Reporter**
25                **35 East Mountain Street**
              **Fayetteville, Arkansas 72701**

```
 1                         APPEARANCES

 2   APPEARING ON BEHALF OF THE PLAINTIFF:

 3        Mr. Kenneth R. Shemin
          Shemin Law Firm, PLLC
 4        3333 Pinnacle Hills Parkway, Suite 603
          Rogers, Arkansas 72758
 5        479-845-3305 Phone
          479-845-2198 Fax
 6        ken@sheminlaw.com

 7        Mr. Thomas P. Thrash
          Thrash Law Firm
 8        1101 Garland Street
          Little Rock, Arkansas 72201
 9        501-374-1058 Phone
          501-374-2222 Fax
10        tomthrash@sbcglobal.net

11
     APPEARING ON BEHALF OF THE DEFENDANT:
12
          Messrs. Chad W. Pekron and Robert Ryan Younger
13        Quattlebaum Grooms Tull & Burrow PLLC
          111 Center Street Suite 1900
14        Little Rock, Arkansas 72201
          501-379-1726 Phone
15        501-379-3826 Fax
          cpekron@qgtb.com
16        ryounger@qgtb.com

17

18

19

20

21

22

23

24

25
```

1          THE COURT:  The first of several similar

2    matters before the Court today is the case of

3    Christopher Kinney versus Dole packaged products, LLC.

4    Our docket number is 5:14-CV-05182.  The plaintiff,

09:04AM  5    Mr. Kinney, is represented by Mr. Tom Thrash and Mr. Ken

6    Shemin.

7          Good morning, gentlemen.

8          MR. SHEMIN:  Good morning.

9          MR. THRASH:  Good morning, Judge.

09:04AM 10          THE COURT:  Mr. Shemin, congratulations on your

11    recent victory in front of the Eighth Circuit.

12          MR. SHEMIN:  Thank you, your Honor.

13          THE COURT:  The defendants are represented by,

14    we have Chad Pekron?

09:04AM 15          MR. PEKRON:  Yes, your Honor.

16          THE COURT:  And is this Ryan Younger?

17          MR. YOUNGER:  Yes, your Honor.

18          THE COURT:  All right.  A pleasure to have you

19    gentlemen in our court today.

09:04AM 20          MR. YOUNGER:  Thank your Honor.

21          MR. PEKRON:  Thank you.

22          THE COURT:  There are two motions that are

23    pending, fully briefed and ripe for consideration in

24    this case.  The first is Dole's motion for judgment on

09:05AM 25    the pleadings, and the second is Mr. Kinney's motion for

1    class certification.

2         Later this morning, I believe beginning at the

3    10:00 hour, we have two other matters that in many

4    respects are very similar to the case here that are set

09:05AM    5    on class certification motions.  That would be Gabriele

6    versus ConAgra Foods and Center versus ConAgra Foods.

7         And I'd like to ask Mr. Pekron and Younger

8    whether or not you would be able to stay to our 10:00

9    hour and perhaps participate -- I mean, what I would

09:06AM    10    like to do is consolidate all three of those cases that

11    are on the docket this morning for purposes of the class

12    certification motions.  There are some differences, but

13    there are more similarities certainly than there are

14    differences.  Would you be able to do that?

09:06AM    15         MR. PEKRON:  Absolutely, your Honor.

16         THE COURT:  All right.

17         MR. PEKRON:  And just so the Court's aware, I

18    think -- I'm not sure what Mr. Thrash is planning to do,

19    but with respect to our motion for judgment on the

09:06AM    20    pleadings, I was planning on talking about that in the

21    context of arguing class certification to explain why

22    his claims should not be certified.  I was just going to

23    talk about the judgment on the pleadings in that

24    context, but however the Court wants to handle it is

09:06AM    25    certainly fine with us.

                    THE COURT:  Well, I'm trying to make as much

progress as we can today, but I don't anticipate that

I'm going to rule from the bench on your threshold

motion, and it just makes sense to me, rather than -- if

09:07AM    I'm not going to do that and we are here and that

motion, the class cert motion, is set for hearing today,

it doesn't make a whole lot of sense for me to go

completely through that analysis in your case and then

turn around at our 10:00 hour and go through it again,

09:07AM    given the similarities.

                    I'll let you argue and talk about it, but I've

read your briefing and I think that I can steer our

conversation for this threshold motion for purposes of

our discussion today.

09:07AM            MR. PEKRON:  And just so you're aware, your

Honor, counsel for ConAgra is here already with us this

morning as well.

                    THE COURT:  All right.

                    MS. SPIVEY:  Yes, your Honor.  We're here.

09:08AM            THE COURT:  Good morning.  Thank you.

                    MS. SPIVEY:  Good morning.

                    THE COURT:  So -- you may be seated.

                    So what I would like to do is I would like to,

as I said, start with the motion that has been filed by

09:08AM    Dole for a judgment on the pleadings.  And I would

1    try -- I'd like to try to focus our argument today on

2    just two or three of the issues that have been briefed.

3              As the parties are aware, in the Gabriele and

4    Center cases that I mentioned earlier, this Court has

09:09AM  5    made certain rulings with respect to preemption and with

6    respect to the fact that in this Court's opinion, the

7    Arkansas Deceptive Trade Practices Act is not applicable

8    to the facts of this case because it would fall within

9    the Safe Harbor provisions of that act.

09:09AM  10             Certainly I would think that the Court's

11   rulings in those other cases, to the extent that they

12   apply, would apply here, and I think that they do.  So

13   we don't need to spend much time discussing those

14   issues.

09:09AM  15             What we do need to discuss is an issue that

16   Dole has briefed that I think their briefing and their

17   argument is a little sharper than the argument that was

18   made in the Center and Gabriele cases as it relates to

19   facial plausibility and the heightened scrutiny that

09:10AM  20   they contend applies pursuant to the fraud pleading

21   under Rule 9(b).

22             So what I would like to do, Mr. Pekron, is I've

23   read your briefing.  You don't need to completely

24   reinvent the wheel, but I would invite you to make

09:10AM  25   argument on those issues specifically and just try to

1   concisely and succinctly state why you contend that the

2   Kinney complaint should be dismissed based on lack of

3   facial plausibility and lack of compliance with the

4   pleading standard at Rule 9(b).

09:11AM   5   And you may make argument from counsel table,

6   you may sit if you'd like, or if you prefer, you're

7   certainly welcome to use the podium.

8   MR. PEKRON:  Okay.  Thank you, your Honor.

9   Your Honor, you're certainly correct to note

09:11AM  10   that under Rule 9(b), there is a heightened pleading

11   standard that applies to fraud claims, and here that

12   means that the elements, the essential elements of the

13   fraud have to be pleaded with particularity.

14   It's not just enough to say "we were deceived"

09:12AM  15   or "we were defrauded."  You need to show in detail the

16   facts underlying what was deceptive, how it was

17   deceptive regarding these labels in question and, your

18   Honor, for numerous reasons plaintiffs have failed to do

19   that here, and it does turn on this question of facial

09:12AM  20   plausibility.

21   The labels at issue in this case only say "all

22   natural fruit."  That is all they say.  Plaintiffs,

23   however, have asserted that "all natural fruit" can only

24   have one possible meaning and that is that there is

09:12AM  25   nothing in this product except fruit and that fruit is

1   all natural, and if there's anything else in it, it

2   fails and it's deceptive.

3       But, your Honor, I'll begin my analysis by

4   saying what do they say is deceptive about this?  They

09:12AM  5   say it's deceptive because it's ascorbic and citric

6   acids in the product.

7       Well, if you turn over the product and look at

8   the ingredient list, on the very back it says ascorbic

9   and citric acids are there.  And so the claim cannot be

09:13AM  10   that consumers were not informed that there was ascorbic

11   and citric acid in these products because that

12   information was clearly disclosed on the ingredient

13   list.

14       The bigger problem really, your Honor,

09:13AM  15   here -- well, really the biggest problem is that the

16   information that they claim was withheld was, in fact,

17   disclosed.  There's no question about that.  They don't

18   say that ascorbic and citric acid were not -- they

19   didn't know about that.  All they say is, "Well, that

09:13AM  20   wasn't on the front because the front says 'all natural

21   fruit,' and I was entitled to look at that."

22       But the other problem with that is on the

23   facial level, the product is all natural fruit.  They've

24   never said that there's something about the fruit that

09:13AM  25   is not all natural.  The fruit itself is what it is.

1    It's fruit.

2          Now, the ascorbic and citric acid that are in

3    there, and we'll talk in a minute about whether or not

4    that plausibly is or is not natural, but the fact is

09:14AM    5    that's not the fruit, and the only thing that is

6    represented as being natural is all natural fruit.

7          And so facially plausible, they don't meet that

8    standard to begin with because the statement they

9    challenge is unquestionably literally true.  And even if

09:14AM    10    there was some question what they say is not contained

11    in the product -- or what they say is not disclosed by

12    the front of the product is disclosed on the back in the

13    ingredient list.

14          And what plaintiffs are not allowed to do is to

09:14AM    15    pick and choose parts of the label in isolation and say,

16    well, this is deceptive and ignore specific clarifying

17    information that makes clear what's in there.

18          Ingredient lists are there for a reason.  As

19    the Kelly Court from the Western District of Missouri

09:15AM    20    said, the reason there's an ingredient list is so that

21    consumers have all the information they need to make an

22    informed decision on the product.

23          THE COURT:  So what you're saying is the hook

24    that you use in large bold print doesn't really matter

09:15AM    25    as long as you, in effect, disclaim that in the fine

1  print that is not bold and that is not as prominently

2  displayed?  Is that what your argument is?

3           MR. PEKRON:  No, your Honor.  I think what -- I

4  don't think you could put something on the front of your

09:15AM  5  package in big letters that is clearly false and

6  then -- you know, you couldn't say on the front "No

7  ascorbic and citric acid" and then have on the back in

8  little letters ascorbic and citric acid on the

9  ingredient list.  I'm not saying you could do that.

09:16AM  10          What I'm talking about here is a word "natural"

11  that is subject to multiple interpretations.

12          THE COURT:  And is Mr. Kinney's interpretation

13  one of the multiple definitions?

14          MR. PEKRON:  Your Honor, the Court in Brazil

09:16AM  15  where the plaintiff made the exact same definition and

16  said, "Well, I read 'all natural fruit' to mean that the

17  entire product was all natural," the Court in Brazil

18  said that's a nonliteral interpretation of the labels.

19          THE COURT:  Is Brazil the case that went to the

09:16AM  20  merits, though?

21          MR. PEKRON:  Yes.  Yes, your Honor.

22          THE COURT:  Brazil was not dismissed at the

23  motion to dismiss stage, was it?

24          MR. PEKRON:  That's correct.

09:16AM  25          THE COURT:  All right.  And so back to my

question:  Is Mr. Kinney's interpretation or what he

believed that that term "natural" meant, is that -- do

you agree that that constitutes one of the reasonable

definitions that one might attach to the term "all

09:17AM  natural"?

MR. PEKRON:  Well, your Honor, I want to be

really careful here by distinguishing "all natural"

versus "all natural fruit" because that's what our label

said was "all natural fruit."

09:17AM  THE COURT:  Well, your labels also say 100

percent.

MR. PEKRON:  No, your Honor.  That would be the

ConAgra labels.  Our labels say "all natural fruit,"

unless there's something that you're --

09:17AM  THE COURT:  I must have looked at the wrong

label.

MR. PEKRON:  Our labels say "all natural

fruit."

THE COURT:  And you represent Dole, right?

09:17AM  MR. PEKRON:  Yes, your Honor.

THE COURT:  I'm looking at a label for Dole

that says 100 percent fruit juice.

MR. PEKRON:  Yes, the fruit juice.  But I'm

talking -- right now the only statement that they've

09:17AM  challenged is the "all natural fruit" statement.  They

1  have not made a challenge to "100 percent" or anything

2  in this case.  The only statement that they've claimed

3  is misleading is "all natural fruit."

4        And, your Honor, Courts have repeatedly said

09:18AM  5  that general terms such as "natural" are too general

6  standing alone for a consumer to rely upon them and so

7  they're not -- they're not capable of a meaning,

8  standing alone, that constitutes deception.  And it's

9  for that reason, your Honor, the fact that "natural" is

09:18AM 10  not a term with a firm, fixed definition.

11        THE COURT:  Well, here's where I'm coming from.

12  I'm trying to better understand whether plaintiff's

13  complaint should fail at this stage because their

14  interpretation of that label does not meet the minimum

09:19AM 15  pleading requirements versus whether their

16  interpretation is a reasonable interpretation that you

17  just simply disagree with, which might speak more to

18  that issue being decided at some subsequent stage in the

19  proceedings.

09:19AM 20        So help focus me in on why you contend, if

21  there are multiple definitions and multiple ways in

22  which a consumer might react to the term "natural" or

23  "all natural," why the complaint should be dismissed on

24  the pleadings.

09:19AM 25        MR. PEKRON:  Certainly, your Honor.  It's

1 plaintiff's burden under Rule 9(b) to state what is

2 misleading about the definition, about the term, and

3 then why it deceives a reasonable consumer.

4        THE COURT: Do they have to be correct about

09:19AM 5 that, or do they just have to make allegations that

6 state a plausible cause of action?

7        MR. PEKRON: They have to -- I agree that the

8 allegations have to state a plausible cause of action,

9 but here they haven't even gotten to that because they

09:20AM 10 have not provided any definition for the term of

11 "natural" other than this --

12        THE COURT: Well, have they not pointed to the

13 definitions that have at least loosely been adopted or

14 referenced by the FDA?

09:20AM 15        MR. PEKRON: Well, your Honor, this Court's

16 already recognized that those FDA regulations do not

17 have the force of law and, your Honor, the fact is those

18 regulations state any artificial or synthetic product

19 that a consumer would not expect to be in the product.

09:20AM 20 And they've provided nothing to state that a citric and

21 ascorbic acid are products that a consumer would not

22 normally expect to be in a product.

23        This is a can. This is not -- this is a can of

24 fruit, and they have not alleged anything in their

09:21AM 25 complaint to state that consumers would not expect that

1    there would be something in that can to keep the

2    products fresh.

3            THE COURT:  Are those acids that are at issue

4    here natural, or are they synthetic?

09:21AM  5            MR. PEKRON:  Your Honor, we believe they are

6    natural products.  They are -- citric and ascorbic

7    acid -- your Honor, ascorbic acid, just for the record,

8    is Vitamin C, and citric acid is a commonly occurring in

9    nature product.

09:21AM 10            Even there -- I know we're getting outside the

11   pleadings for a moment, but their own expert has said

12   that citric and ascorbic acids occur naturally in

13   fruits.  Citric and ascorbic acids -- and it's their

14   duty to explain why in the complaint citric and ascorbic

09:21AM 15   acids are unnatural.

16            Under Rule 9(b) if they are going to say that

17   "natural" is misleading because citric and ascorbic

18   acids are in there, that's not enough.  It's not enough

19   to say that.  You've got to say why that's misleading.

09:22AM 20   You've got to say why citric and ascorbic acids are

21   unnatural.

22            Their complaint doesn't have any of those

23   allegations.  Their complaint does not explain what's

24   unnatural about citric and ascorbic acids.  All

09:22AM 25   they -- they make a conclusory allegation that citric

and ascorbic acids are unnatural, but that's not enough.

They need to say, "Well, these are synthetic and here's

why they're synthetic," but they don't do that.

       To plead fraud and deception under Rule 9(b),

you have to do more.  You have to state what it is about

these, especially when it's something like citric and

ascorbic acid that admittedly occur in nature.

       THE COURT:  Well, let's talk about 9(b) for a

second.  I'm interested in that.  9(b) says in alleging

fraud, a party must state with particularity the

circumstances constituting the fraud; goes on to state

that the actor's state of mind or motive or intent need

only be alleged generally.

       In a 20- to 30-page complaint that Mr. Kinney

has filed, are you taking the position that you don't

understand the deceptive acts that you're being accused

of?  Is that your grievance?

       MR. PEKRON:  Your Honor, what we understand

from the complaint is that they have said that the "all

natural fruit" statement is deceptive because the

products contain citric and ascorbic acid, but that by

itself cannot possibly satisfy 9(b) because citric and

ascorbic acid are disclosed on the labels.  They're

listed on the ingredient list.

       So, your Honor, they have to say something more

1    than that.  They have to say, well, how is it deceptive?

2    What's deceiving about the word "natural"?  What's so

3    inherently deceptive about the term "natural" that

4    people wouldn't even think that there are such things in

09:24AM  5    here, despite the fact that they're pleaded on the

6    ingredient -- that they're contained on the ingredient

7    list.

8         THE COURT:  Well, isn't the idea that you put

9    in great big letters terminology that attracts the

09:24AM  10   consumer in such a way that the consumer identifies this

11   as being a premium product for which it might pay more

12   for as compared to a product that doesn't use that hook?

13   Isn't that what they're saying is that there's some

14   marketing plan or some way that these labels have been

09:25AM  15   designed to hook the customer in to paying more for

16   Dole's product because it's all natural?

17        MR. PEKRON:  Your Honor, even if that's what

18   they allege, they still have to allege that there's

19   something false and misleading about this, and the fact

09:25AM  20   is it says "all natural fruit," and they haven't alleged

21   that it isn't all natural fruit.  They haven't said

22   there's anything unnatural about the fruit.  That's the

23   only thing that's being alleged to be all natural here.

24   And so they fail on that first issue right there, number

09:25AM  25   one.  They've never said there's anything unnatural

1    about the fruit.

2         Number two, to the extent they say there's

3    something unnatural about the product as a whole, it's

4    the presence of these acids that are specifically

09:25AM  5    disclosed on the ingredient list.  And so then they just

6    have -- at the end of the day, they say, "Well, I read

7    it differently than that.  I know what it says here.  I

8    know what the product says, but I read it differently."

9    But under Rule 9(b), that's not enough.  Under Rule 9(b)

09:26AM 10    you can't advance a nonliteral interpretation of a

11    product label that says one thing --

12         THE COURT:  Is your argument that -- are you

13    hanging your hat exclusively on 9(b), or is there

14    something to your argument whereby 9(b) heightens an

09:26AM 15    Iqbal and Twombly type of pleading standard or

16    requirement?

17         MR. PEKRON:  Your Honor, I think Rule 9(b)

18    definitely does create a heightened level of scrutiny

19    that must be applied.  And, for example, some Courts

09:27AM 20    have said that you have to plead the who, what, when,

21    where, and how of the alleged fraud.

22         It's not enough to make vague, generalized

23    allegations.  You have to say, for example, quoting the

24    Figy case that's in our briefs:  The Court there

09:27AM 25    dismissed all natural claims holding "it is insufficient

1  under Rule 9(b) to simply assert, no matter how foreign

2  or synthetic sounding ingredients they might be, that an

3  ingredient is unnatural."

4       And the Chin case from the district of

09:27AM  5  Minnesota dismissed natural claims because the

6  plaintiffs failed to specify how they received or what

7  they believed the labels to mean.

8       And so, your Honor --

9       THE COURT:  I guess my question is are you

09:27AM  10  hanging your hat exclusively on this notion that the, in

11  terms of the fraud, in terms of what you contend is a

12  fraud complaint, is your grievance that they haven't

13  identified the who, what, when, where, why and how; or

14  are you seeking to hang your hat on more of a Rule 8

09:28AM  15  analysis and in a more Iqbal and Twombly type problem?

16       MR. PEKRON:  Your Honor, I think it fails on

17  both grounds.  I think it fails Iqbal and Twombly

18  because it does not state a plausible claim for relief

19  here.  All they are saying is "We read this statement

09:28AM  20  that says 'all natural fruit' to mean something

21  completely different, something different than what it

22  says and so you should grant us -- you should let this

23  complaint go forward."

24       But I think Iqbal and Twombly require a

09:28AM  25  plaintiff to say more than that.  They need to say --

09:29AM

especially here where they are going against the literal language of what they are challenging, they need to come forward with more than that and give plausible allegations of what's misleading about that, what wasn't disclosed, what were they told that in fact wasn't true. And they haven't done any of that.

The product's all natural fruit. They've never said anything to the contrary. They say, "Well, the product has citric and ascorbic acids." It sure does. It says so on the ingredient list.

Iqbal and Twombly require you to say something plausible about the labels, about the packaging that's deceptive. It's not enough to just say, "Well, if you read it this way, it might be deceptive." They need to show that a reasonable person would read it that way.

I could say -- it's not enough to say, "Well, I read 'all natural fruit' to mean..." and then just make up whatever allegations you want and put it on there.

THE COURT:  Well, do they have to prove at this stage how a reasonable person would perceive that, or do they merely have to allege that it would be plausible that a reasonable person would read it in a certain way?

MR. PEKRON:  I think it's hard to separate the two, but the fact is they haven't pleaded either.  They haven't pleaded that it's even plausible that a

1    reasonable person would read something that says "all

2    natural fruit" and that says "citric and ascorbic acid"

3    on the back to mean this product does not contain citric

4    and ascorbic acid.

5    Because, your Honor, at the end of the day,

6    that is the only thing that they are claiming is

7    improper about this product.  They are not claiming that

8    it's harmful or that it's unhealthy or that the fruit

9    was bad or that it wasn't fruit or something like that.

10   The only problem they state with this product in its

11   entirety is that it contains citric and ascorbic acids,

12   something that's on the label, disclosed on the

13   ingredient list, was right there for anybody that cared

14   about it.

15   And so, yeah, they have to show that it's

16   reasonable for somebody to put so much emphasis on

17   what's on the front and to read it in a way that's not

18   the natural reading of the language.  But then to say,

19   "But I can ignore everything else that would tell me

20   that how I'm reading this is incorrect," I don't think

21   that's plausible and I don't think it satisfies Rule

22   9(b).

23   THE COURT:  All right.  Thank you.  Anything

24   further you'd like to add?

25   MR. PEKRON:  No, your Honor.  You know, I think

1    we've got some -- well, I think we have some specific

2    points on the individual causes of action and we've

3    pleaded them in our briefing.  You know, we obviously

4    recognize the Court's rulings in the ConAgra cases.

09:32AM    5         We believe that there are some differences in

6    how they've pleaded here that would make on

7    the -- especially on the unjust enrichment claim, we

8    think that they have not pleaded the necessary link

9    between Dole and the plaintiff to satisfy an unjust

09:32AM   10   enrichment.

11        We believe that under Arkansas law that has to

12   be a direct link.  They have to have purchased the

13   product directly from Dole.  They don't allege that.

14   They allege they purchased it from third parties who

09:32AM   15   purchased it from Dole.  So we don't believe that

16   they've alleged that plaintiff directly enriched Dole.

17   We think that's a necessary element of an unjust

18   enrichment claim.

19        On the express warranty claim, your Honor, this

09:32AM   20   Court's opinion in ConAgra did not discuss the

21   statute -- it's 4-2-317 -- which says that warranties

22   under Arkansas law must be read in harmony with one

23   another, everything on the packaging.  And so you can't

24   read "all natural fruit" to the exclusion of what's on

09:33AM   25   the labeling.

1          And moreover, 4-2-317 says exact specifications

2    will trump general descriptive language.  And so if

3    there's general language that says "all natural" but

4    then there's specific language that says this is what it

09:33AM  5    includes, Arkansas law on warranties is clear that that

6    express language trumps the general and so we think

7    we're entitled to judgment on the warranty claim for

8    that reason.

9          THE COURT:  On the express warranty claim?

09:33AM  10         MR. PEKRON:  On express warranty.  We believe

11   your Honor got it right on implied warranty for the

12   reasons that they have not pleaded that this is unfit

13   for any purpose.

14         THE COURT:  Right.

09:33AM  15         MR. PEKRON:  And then on negligence, this isn't

16   negligence per se.  Arkansas law rejects that.  Even if

17   we violated a labeling statute, which we don't believe

18   we did, that would at most be evidence.

19         But here they haven't pleaded any of the

09:34AM  20   elements of a negligence claim.  They haven't pleaded

21   who Dole owed a duty to, they haven't pleaded how that

22   duty was reached, especially when what they claim we

23   didn't do is that Dole didn't put on its labels that the

24   product contained ascorbic and citric acid and didn't

09:34AM  25   let consumers know about that.  But they did.  So

1    there's no duty and there's no breach of duty.

2         And so for those reasons, along with the

3    reasons this Court already gave on entering judgment on

4    some of the causes of action in the ConAgra case, we

09:34AM    5    believe we're entitled to judgment in the entirety here.

6         THE COURT:  All right.  Thank you very much,

7    Mr. Pekron.

8         MR. PEKRON:  Thank you.

9         Mr. Thrash?

09:35AM    10        MR. THRASH:  Yes, your Honor.

11        THE COURT:  Why don't we start with the premise

12   that has been alleged in the -- in Dole's motion that

13   9(b) is applicable to your complaint.  First of all, do

14   you agree or disagree with that?

09:35AM    15        MR. THRASH:  Well, your Honor, based on the

16   Court's ruling on the ADTPA, it may not be applicable to

17   the provisions of the unjust enrichment and for the

18   express warranties and implied warranties.

19        THE COURT:  So I guess the question is does

09:35AM    20   9(b) only apply to a complaint that uses the caption and

21   expressly uses the language in identifying the cause of

22   action as being an action for fraud; or is it sufficient

23   if your cause of action, although you may be getting it

24   through various other legal theories, is nonetheless

09:36AM    25   bottomed on the idea that a fraudulent act or a

deceitful act is what your cause of actions are bottomed on?

MR. THRASH:  Yes, your Honor.  I'm not sure I know the answer to that.  It would make sense that if it's bottomed on the fraud that it would apply to, whether it's a breach of an express warranty or unjust enrichment.

THE COURT:  And in this case the factual allegations in your complaint are that Dole made a false representation about its product, that Mr. Kinney relied on that false representation, i.e., all natural, and that Mr. Kinney was reasonable in so relying and that he would not have purchased this product had he known otherwise and therefore he's been damaged.  Those are the essential contentions that Mr. Kinney is making, correct?

MR. THRASH:  That is correct.  And, you know, with regard to the breach of warranty and breach of implied warranty, you know, we believe that reliance and some of the elements that we have pled don't necessarily apply in those individual cases; and certainly under unjust enrichment, the equitable remedies under unjust enrichment may not require reliance.

So those, those three issues, you know, we feel like are more conducive to class certification because

1   of the nature of the claims.

2         THE COURT:  Okay.

3         MR. THRASH:  And, your Honor, with regard to

4   9(b) and satisfying the pleading requirements, you know,

09:38AM  5   under the Arkansas law, under the Arkansas statutes that

6   apply, the product is misbranded if the labeling is

7   false or misleading in any particular.  That's the --

8   that's the statutory definition of "misbranded" under

9   the Arkansas law.  And we have certainly pled that Dole

09:38AM  10  has misbranded the product by saying it's all natural

11  fruit when, in fact, it's not all natural.  It has

12  synthetic and artificial ingredients.

13        And the fact that you would argue it says "all

14  natural fruit," this product is a -- it's not in a can.

09:39AM  15  It's in a canister.  It's in a, you know, a clear cup, a

16  sealed cup that has fruit in it and fruit juice.  And to

17  say that "all we meant by all natural fruit was that the

18  apple in there is all natural; the stuff we put into the

19  apple and on the apple to preserve it and the artificial

09:39AM  20  and synthetic ingredients we dumped into the product,

21  now, that's not all natural."

22        THE COURT:  Well, let me drill down on that a

23  little bit.  Would you concede, just as kind of a

24  threshold matter, that these acids, these synthetic

09:40AM  25  acids that have been added -- you refer to them or you

1  contend that they're synthetic anyway -- do you

2  nevertheless concede that those acids are listed on the

3  ingredient panel?

4          MR. THRASH:  Yes, sir, they are.

09:40AM  5          THE COURT:  And secondly, do you concede that

6  these products consist of real fruit and fruit juices as

7  opposed to merely fruit-flavored fruits and juices?

8          MR. THRASH:  Yes, your Honor, it's my

9  understanding they do contain apples or peaches or

09:41AM  10  whatever the type of fruit it is.

11         THE COURT:  So in other words, I know when I go

12  to the grocery store, whether it's orange juice or

13  whether it's really any sort of juice, you kind of have

14  to look real careful at the labels to figure out whether

09:41AM  15  it's real juice or whether it's merely some liquid that

16  is orange-flavored or apple-flavored or

17  pineapple-flavored.

18         In this case with Dole's products, do you

19  concede that the juice that is in these products,

09:42AM  20  whether it be all juice or juice that is used as part of

21  the packaging of the fruit, do you agree that the juice

22  is real juice as opposed to some liquid that's just

23  merely pineapple-flavored?

24         MR. THRASH:  I think the real answer is I don't

09:42AM  25  know, but for purposes of this, of our case, we have

assumed that it is, and for the Court's argument, I

would concede that it is all 100 percent juice.

THE COURT:  And would you also concede that

products that contain real fruit and real juice are

09:42AM  reasonably entitled to a premium vis-a-vis products that

contain merely fruit-flavored content?

MR. THRASH:  From my own personal experience,

yes, sir.

THE COURT:  And if that is true, what is false

09:43AM  or deceptive about Dole's labeling in this case?

MR. THRASH:  They say it's all natural fruit.

They don't tell you that they have added preservatives

to the fruit that are not natural.

THE COURT:  But it is all natural.  I think

09:43AM  that you've conceded that it's all natural in the sense

that it is real fruit and real fruit juice as opposed to

merely a product that contains fruit-flavored products?

MR. THRASH:  In that com- -- in that

comparison, it would be all natural fruit.  If they are

09:43AM  going to add a synthetic or an artificial preservative,

then it no longer becomes all natural.  It is a -- it's

a byproduct, and it's not all natural.

If I'm looking -- a lot of foods don't have

preservatives in them.  A lot of foods are all natural,

09:44AM  and if they are going to tell people this is an all

natural product, they can't add a synthetic or

artificial preservative.  And the FDA, in the stuff that

we have filed, in the information that we have filed

from the FDA says because they believe it's deceptive,

09:44AM    you cannot say "all natural" if you are going to add an

artificial or synthetic preservative, just exactly like

what they have done here today.

THE COURT:  Would the FDA let you put an

organic label on these products if it was real fruit and

09:44AM    real juice and the only thing that was added was a

preservative?

MR. THRASH:  I think under their rules, under

organic, meaning it was grown without certain chemicals,

then they may be able to say it was organic, but they

09:45AM    can't say it was organic and all natural.

THE COURT:  And from what I can anecdotally

tell, if you can put the word "organic" on your label

and you can command a pretty hefty premium, and if that

is true, don't you find it odd that Dole could have

09:45AM    placed an organic label if that was their intent to

garner a premium, but they can't put a natural label on

it?

MR. THRASH:  Well, your Honor --

THE COURT:  Does that not seem odd?

09:45AM    MR. THRASH:  I don't think they could put

1    organic on this, on these products because they're not

2    organic.  They were grown with pesticides and all kinds

3    of chemicals.  So they can't say it's organic.  And so

4    the best they could do is say it's all natural when it's

09:46AM   5    not all natural.

6          If they had grown it organically and followed

7    the federal regulations that allow them to market it as

8    organic, they still could not have said "all natural"

9    because they put the pre- -- the synthetic and

09:46AM   10   artificial preservative in it.

11         THE COURT:  All right.  Well, maybe the organic

12   analogy was not very good because we don't have any

13   information about the -- what was used in the growing of

14   these fruits.

09:46AM   15        But going back to the definition of "natural"

16   and "all natural," why is Mr. Kinney's subjective

17   understanding or definition of those terms controlling?

18   In other words, what is deceptive about Dole using those

19   terms to describe some other reasonable aspect or

09:47AM   20   attribute of the products?

21         MR. THRASH:  Well, they put "all natural" on

22   the front of the label for a purpose because as the

23   Court said, it's worth more, worth more if it's organic,

24   worth more if it's all natural.  Under the federal FDA

09:47AM   25   guidelines, they can't put "all natural" on there

1    because it's not all natural because it has synthetic

2    and artificial preservatives; yet, they put it on there

3    anyway.

4              THE COURT:  I want to talk about the FDA in a

09:47AM  5    second.  Let's set that to the side.

6              Other than this coming down to whether FDA has

7    formally promulgated a "natural" definition, what is

8    wrong with Dole's interpretation or explanation as to

9    what it means when it says that the product is all

09:48AM 10    natural?  What is deceptive about that?

11             MR. THRASH:  Well, under the Arkansas -- under

12    the Arkansas law and the Arkansas statute, it's

13    misbranded if labeling is false or misleading in any

14    particular.

09:48AM 15             If I come in and I say, okay, this is an

16    all -- it's all natural fruit, but the salt and pepper I

17    put on it, the preservatives I put on it, everything I

18    put into the fruit to keep it so it will last for ten

19    years so when you get it off the shelf ten years from

09:48AM 20    now, you can still eat it, that's not all natural, but

21    that's not really what I was talking about.  I was

22    talking about just the -- just the fruit before we put

23    it into the preservatives.

24             THE COURT:  Well, Dole sells its products all

09:49AM 25    over the country, right?

1          MR. THRASH:  Yes, sir.

2          THE COURT:  Don't we get back into this

3    preemption issue and the fact that the Arkansas statute

4    to which you refer cannot be any larger than -- or more

09:49AM   5    restrictive than the federal interpretation?

6          MR. THRASH:  That is correct, your Honor.  It's

7    my understanding also that the FDA -- this is not

8    broader than the FDA regulations.  The same as the FDA

9    regulations, they have a general catchall similar to

09:49AM  10    that.  We've just cited the Arkansas because the

11    Arkansas has adopted the FDA regulations.

12          And so if the FDA says in their papers that you

13    should not use "all natural" if your product contains

14    any artificial or synthetic chemical or ingredient or

09:49AM  15    preservative, you cannot say all natural.

16          THE COURT:  But the FDA, at least my

17    understanding is that they've never formally adopted a

18    quote/unquote "natural" definition.

19          MR. THRASH:  They have not.  And formerly they

09:50AM  20    have and then they've sent out warning letters to

21    companies that says you cannot use "all natural" if you

22    use a synthetic or artificial preservative.  You cannot

23    say it.

24          THE COURT:  But despite several opportunities

09:50AM  25    that were squarely in front of the FDA and multiple

1    invitations for them to promulgate and recognize a

2    formal definition, at least as of this point in time,

3    the FDA's not done so; is that correct?

4          MR. THRASH:  That is correct.  That's my

09:50AM  5    understanding.

6          THE COURT:  All right.  So other than this

7    notion that the deception on which your claims are

8    bottomed is premised on the Arkansas statute that

9    mirrors FDA regulations, other than that, how would you

09:51AM 10    articulate what is deceptive about Dole's labeling in

11    this case?

12          MR. THRASH:  If all I had to argue in front of

13    a jury was the label on this, on this product, the label

14    says "all natural," "all natural fruit."  And what their

09:51AM 15    position is, well, the fruit is kind of all natural;

16    what we did to the fruit to preserve it and all the

17    chemicals we -- all the unnatural chemicals we put in

18    it, we weren't talking about that.

19          We weren't talking about all the chemicals we

09:51AM 20    dumped into the fruit to preserve it and to, you know,

21    to make it where it would last for a long time and to

22    make it firm, to keep the tomatoes firm, to do all of

23    those artificial synthetic ingredients.  We weren't

24    talking about that when we said "all natural."

09:52AM 25          THE COURT:  Well, Dole says that it's

1   marketing, but it's not deceptive because we list those

2   on our ingredients list.

3          MR. THRASH:  Well, the ingredients that are

4   listed don't really tell you that they're artificial.

09:52AM  5   They don't tell you that they're synthetic.  Citric

6   acid, they could have put citric acid in here that came

7   from oranges or lemons and squeezed and it could have

8   been natural, but that's not what they did.

9          They manufactured the citric acid synthetically

09:52AM  10   and dumped it into the product.  And if you're going to

11   say -- and I hadn't really thought about this, but in a

12   comparison if you had Gatorade powder, it's all 100

13   percent Gatorade.  And then when you dump water into it,

14   this water you've put preservatives, you've put all

09:52AM  15   kinds of chemicals in it which makes the juice, it's 100

16   percent all-natural Gatorade.  So --

17          THE COURT:  But if I'm drinking orange-flavored

18   Gatorade, that doesn't make it orange juice.

19          MR. THRASH:  That's correct.

09:53AM  20          THE COURT:  And you've conceded that what

21   they're selling is, in fact, pineapple juice or --

22          MR. THRASH:  It's pine- --

23          THE COURT:  -- real pineapple packed in

24   genuine --

09:53AM  25          MR. THRASH:  It's pineapple juice with

synthetic preservatives pumped into it to preserve the

product.

        THE COURT:  When I was growing up as a little

kid, my mom was into canning and she would go to the

09:53AM  store and buy the Mason jars and the lids and we had a

great big pot of boiling water going and sterilize all

that stuff.  And she would take, you know, peaches or

whatever it was that she was canning and put them in the

Mason jars.  And then there was some soluble substance

09:54AM  that she would add in there to maintain the color of the

peaches or whatever it was that she was preserving.

        Are you saying that all this time that I

thought that I was eating peaches that had been picked

just off the tree, that those are not all natural

09:54AM  peaches?  Did my mom deceive me?

        MR. THRASH:  If your mom said they were all

natural, they're all natural.  I understand that.  But

if you were going out and if you're going to -- you can

sell a product that's all natural.  It doesn't last as

09:54AM  long, it may not have the same color, and it may not

have the same firmness, but you can sell a product

that's all natural.

        THE COURT:  Well, when I go to my -- and I shop

at Harp's over on the east side of town.  And at one end

09:54AM  of that store, they have all the fresh fruits and

1    vegetables; and in the fruit side, they've got these

2    kind of flimsy plastic containers that have pineapple in

3    them, and those don't last very long.  But if I go a few

4    aisles over, I can buy pineapple that's either in a can

09:55AM    5    or in, as in this case, some plastic packaging that is

6    sealed in such a way that it will -- that it has much

7    longer shelf life.

8              Are you suggesting that -- to the extent that

9    my experience with where I shop is representative, are

09:56AM   10    you suggesting that the consumer doesn't understand the

11    difference between how a fresh, as in recently

12    processed, fruit is packaged and sold versus how a

13    product intended to have a greater shelf life, greater

14    pantry life is packaged?  Does the consumer not

09:56AM   15    understand that difference?  Is that your position?

16              MR. THRASH:  Well, apparently Dole and ConAgra

17    think there is a distinction because some of the

18    products, when you go past those fresh containers, like

19    you say, those fresh containers aren't going to last

09:56AM   20    very long.

21              You go to the other aisle, if it's -- they are

22    not going to say "all natural" because they're not all

23    natural.  They've got preservatives in them.  But they

24    are going to say, you know, canned fruit.

09:57AM   25              What Dole and ConAgra have discovered is that

1  if they put "all natural" on there, it's a better

2  product than the can that's sitting right beside it that

3  has the preservatives that doesn't say "all natural" and

4  they can sell more and it's more pleasing to the

09:57AM  5  customer.  And that's why the FDA has said you cannot

6  use "all natural" on your products when you put

7  preservatives in them.

8          Nobody else can, either.  This ought to be a

9  level playing field.  And you can't say "all natural"

09:57AM  10  when it's not all natural, and that's our -- that's our

11  case.

12          THE COURT:  Let's talk about that in the

13  specific context of your causes of action, the express

14  warranty claim in particular.  I think Mr. Pekron made

09:57AM  15  this point earlier.

16          If you look at the sales code, 317 I think it

17  is, his point on behalf of Dole is that if the label

18  contains a listing of all of the ingredients, it can't

19  be a breach of warranty merely because they accentuated

09:58AM  20  one certain characteristic or attribute of the product.

21          Do you agree or disagree with that?

22          MR. THRASH:  I disagree completely, your Honor,

23  because I think once they misbranded the product by

24  putting "all natural" on the front, once they've

09:58AM  25  misbrand --

1    THE COURT:  But that still relies on the

2  Arkansas food labeling statute.

3    MR. THRASH:  And the FDA food labeling statute,

4  that's correct.

09:58AM  5    THE COURT:  All right.  Let's set that argument

6  to the side.

7    MR. THRASH:  Okay.

8    THE COURT:  If we set that argument to the side

9  in terms of the express warranties, the express

09:59AM 10  statements that are on these packages, what is false?

11  What is the misrepresentation?

12    MR. THRASH:  The misrepresentation is all

13  natural fruit.  It's not all natural fruit.  On the back

14  where they say it's -- they have citric acid, that could

09:59AM 15  be natural.  It could be from lemons, it could be from

16  oranges.  They could have naturally included that, but

17  that's not what they did.

18    They put synthetic citric acid and ascorbic

19  acid in the product, and if they are going to put a

09:59AM 20  synthetic or artificial ingredient in the product, I

21  think that's a complete breach of warranty when they say

22  it's all natural because it's not all natural.

23    THE COURT:  On your negligence theory -- I'm

24  somewhat confused.  Are you arguing a negligence per se

09:59AM 25  theory, and if so, I would be interested in your

thoughts on whether that is recognized under Arkansas

law; or are you alleging a more traditional notion of

negligence in the sense of duty, breach of duty,

proximate cause and damages?

10:00AM  MR. THRASH:  It would be the latter, your

Honor.  And --

THE COURT:  What is their -- what was Dole's

duty to Mr. Kinney?

MR. THRASH:  To fully disclose the ingredients

10:00AM  in the product.  Once they said it was all natural and

to disclose that if they are going to put synthetic and

artificial citric acid and ascorbic acid in the product,

they need to tell them that and -- because citric acid

and ascorbic acid could be a natural ingredient.

10:00AM  THE COURT:  Didn't they tell them that by the

ingredient panel?

MR. THRASH:  No, sir, they didn't tell them it

was synthetic.  They didn't tell them it was artificial.

They told them it was just citric acid or ascorbic acid.

10:01AM  And to fully disclose once you say it's all natural when

you know it's not all natural --

THE COURT:  Is there an industry standard then

that suggests that Dole is required to differentiate in

the context of a negligence action between synthetic and

10:01AM  naturally occurring acids?

1    MR. THRASH:  I think the industry standard
2 would be they are not to use "all natural" when they are
3 using a synthetic or an artificial chemical
4 preservative.  I don't know that there -- I don't know
5 that there would be a industry standard for putting in
6 synthetic and artificial in the ingredient list.
7    THE COURT:  All right.  And then on your unjust
8 enrichment theory, again, we're going to set the
9 Arkansas food labeling and the federal food labeling
10 notions to the side for a second.
11    How has Dole been unjustly enriched?  They put
12 pineapple, real pineapple in a container, packed it with
13 real pineapple juice, not pineapple-flavored liquid, and
14 they marketed it as all natural, as in real pineapple,
15 and all natural as in real pineapple juice, which you've
16 already admitted can command a premium price over a
17 product that contains merely fruit flavoring.
18    So how in the world has Dole been unjustly
19 enriched?
20    MR. THRASH:  Well, they use their labeling,
21 their million dollar labeling operations to sell this
22 product as an all natural product when it was not all
23 natural, and because --
24    THE COURT:  Well, it was real.  You've conceded
25 that it was real, real juice.  It's not merely water

10:01AM (lines 5)
10:01AM (line 10)
10:02AM (line 15)
10:02AM (line 20)
10:03AM (line 25)

1    that's flavored with a pineapple flavoring, correct?

2         MR. THRASH:  That's correct.

3         THE COURT:  All right.  And vis-a-vis a product

4    that is liquid that contains pineapple flavoring, one

5    can command a premium price for real juice, correct?

6         MR. THRASH:  I assume that, yes, sir.

7         THE COURT:  Then how has Dole, if we

8    assume -- and I think you've conceded that this product

9    contains real pineapple and real pineapple juice, and

10   you've conceded that one is entitled to a premium for

11   that product vis-a-vis merely pineapple-flavored water,

12   how has Dole been unjustly enriched?

13        MR. THRASH:  They sold this product as an all

14   natural product when it was not, and they caused people

15   to buy that can of all natural fruit instead of the

16   Safeway can that doesn't say all natural because it's

17   not all natural.  And so they have deceptively caused

18   consumers to buy their all natural can when they had

19   exactly -- the exact same product right next to it at a

20   cheaper price.

21        And so they have -- by their false advertising,

22   by their misbranding of their product, they have caused

23   a market, a greater market for their product than the

24   market that was telling -- than the product that was

25   telling the truth on the shelf right beside it.

1          And again, once that product is misbranded, it

2    becomes a unmarketable product.

3          THE COURT:  Well, is it your position that a

4    company cannot put labeling on its product in such a way

10:05AM  5    to emphasize certain superior attributes of its product?

6    In other words, if they intend to explain to the

7    customer or to point out that this is real pineapple,

8    packed in real pineapple juice, are you saying that they

9    can't market that as natural?  Because it is real

10:05AM 10    pineapple.

11          MR. THRASH:  If that's what they're marketing.

12    But if they're marketing -- or they could say it's real,

13    it's real pineapple, it's real pineapple juice.  But

14    they can't say it's all natural when it's not all

10:06AM 15    natural.

16          If they are going to put a synthetic,

17    artificial ingredient in it to preserve it, to make it

18    firmer, to color it, they just, they can't say it's not

19    all natural because it's not all natural.

10:06AM 20          THE COURT:  But they did put on the label on

21    the back side that it contains these, these

22    preservatives, and what you're saying is they can't

23    accentuate the fact that the product contains real fruit

24    and real juice, even if in the fine print they disclose

10:06AM 25    that these preservatives are added?

1       MR. THRASH:  Well, I think they could say this

2   is real pineapple and it's real pineapple juice and then

3   on the back can say we've added preservatives, we've

4   added citric acid, we've added ascorbic acid, synthetic,

10:07AM  5   artificial chemicals to preserve and -- to preserve the

6   product.  I think they could say that, but they can't

7   say it's all natural because it's not all natural.

8       And once they misbrand that product, once they

9   put that misbranded product on the shelf, it's illegal

10:07AM 10   to sell, it's illegal to possess, it's of no value.

11       And so what's it worth to them in an unjust

12   enrichment claim?  The product is of no value.  They

13   shouldn't have been able to sell it, but because they

14   violated and sold it as all natural, that's the value of

10:07AM 15   the unjust enrichment, the wholesale price that they

16   sold it for, or their profits, however the Court, you

17   know, would want to structure the damages.

18       But under an unjust enrichment theory and in

19   our case, we're claiming that the misbranded product was

10:07AM 20   not merchantable, illegal to sell, of no value; and if

21   that's the case, and if a jury believes that "all

22   natural fruit" was deceptive because it wasn't all

23   natural because it had synthetic and artificial

24   ingredients in it, then the next step is, was it -- did

10:08AM 25   that misbrand it.  And if it was misbranded, could it be

sold, legally sold and legally possessed.  And if not,
then the value of the product would be the damages.

       THE COURT:  Let me shift gears with you,
Mr. Thrash.  If the Court were to conclude that
the -- well, Dole has, as part of its motion for
judgment on the pleadings, has contended that the
complaint does not meet Rule 9(b) pleading requirements
and it -- and they also contend that the complaint does
not demonstrate a facially plausible cause of action.

       If the Court were to -- and in response to
that, you have not sought motion for leave to amend.

       If the Court were to conclude that the
allegations in the complaint do not meet the
requirements of Rule 9(b) and/or the allegations in the
complaint are not up to the Iqbal and Twombly
explanation of what it means to have a facially
plausible complaint, if that is what the Court were to
conclude, would you be able to make any further
allegations in an amended complaint that could bring it
within 9(b) and/or Iqbal and Twombly; and if so, what
are the extra allegations that you could envision that
would be made?

       MR. THRASH:  Well, your Honor, I have not spent
a lot of time thinking about that issue, but with regard
to --

1           THE COURT:  The issue is futility.

2           MR. THRASH:  Yes, sir.  Yes, sir.  With regard

3    to the allegations that we have made as to whether -- as

4    to whether the labeling is false or misleading in any

10:10AM  5    particular, we have alleged that the product, the

6    products at issue, are not all natural, are not all

7    natural fruit because they contain an artificial and

8    synthetic ingredient in the nature of citric acid and

9    ascorbic acid and that those products are artificial and

10:11AM  10   synthetic.

11          We've alleged that under the FDA guidelines, it

12   is a deceptive act for Dole to put on the label "all

13   natural," "all natural fruit" when, in fact, it is not

14   all natural.  And if asked to elaborate on that for

10:11AM  15   purposes of a particular pleading, what I would tell the

16   Court is I would go back to Dr. Scarbrough, I'd go back

17   to his allegations in the affidavits and utilize his

18   factual assertions to beef up those allegations.  But I

19   think those allegations, in and of themselves, should be

10:12AM  20   sufficient to satisfy Rule 9(b).

21          And, Judge, you know, the Myers versus Malone

22   and Hyde case, the Eighth Circuit case that dealt with

23   the implied warranty of merchantability, you know, that

24   was a case where you had a sale of a misbranded food

10:12AM  25   product and the Court said that was a breach of the

implied warranty of merchantability because it was

misbranded and it was not marketable.  And the

misbranded food in that case, it was not that the apples

were bad or the apple syrup was bad.  It was there was

10:12AM    a -- there was an FDA regulation that provided it had to

have a certain weight.  If it didn't contain a certain

weight of the product, it was misbranded.

THE COURT:  Here's where I'm going with this.

In my view your complaint covers the waterfront as far

10:13AM    as it can go in alleging your -- the simplest

explanation of your theory, which is that they made a

representation that it's all natural, that is a

mislabeling, a mislabeled product is worthless and,

therefore, under several different theories the

10:13AM    plaintiff is entitled to recovery.

But if the Court were to conclude that what you

have pled does not make out a facially plausible cause

of action and/or does not meet the heightened scrutiny

of Rule 9(b), can you identify today any other

10:14AM    allegation that could be made that would cure the sort

of pleading defects that Dole has identified in their

motion?

MR. THRASH:  We might be able to further allege

the artificial and synthetic nature, factual information

10:14AM    regarding that pertaining to the citric acid and the

1    ascorbic acid.

2            THE COURT:  You've attached copies of the

3    labels to your complaint.  The labels say what the

4    labels say.

10:14AM  5            MR. THRASH:  Yes, sir.

6            THE COURT:  You've laid out what your theory is

7    about the deceitful nature of the labeling.  What else

8    could you possibly allege?

9            MR. THRASH:  Judge, we think that's enough.

10:15AM 10            THE COURT:  Is it true as Dole contends that

11   Mr. Kinney's lawsuit is, in effect, identical?

12   Obviously the names of the parties are changed, but in

13   effect, it is identical to the <u>Brazil</u> case out in

14   California?

10:15AM 15            MR. THRASH:  No, sir, it's not identical.

16   It -- I'm not real familiar with the <u>Brazil</u> case, but

17   the <u>Brazil</u> case --

18            THE COURT:  You did not use the <u>Brazil</u> case as

19   a template in crafting Mr. Kinney's complaint?

10:15AM 20            MR. THRASH:  I probably had the <u>Brazil</u>

21   complaint in drafting the -- Mr. Kinney's complaint.  I

22   probably had a lot of other complaints, similar

23   complaints.

24            The counsel that pursued the California cases

10:15AM 25   had a shotgun effect.  They brought every product ever

known and every angle, every issue, everything, and I

limited our case to specific products with the exact

same claims with -- to avoid issues on class

certification and so our complaint is a lot more

10:16AM   limited, I think, than the Brazil case.  And I don't

really recall what the Brazil -- all the products that

the Brazil case had, but --

          THE COURT:  Well, Dole contends here that the

Brazil case went to the merits and that the Court there

10:16AM   found that there was absolutely no evidence of any fraud

and absolutely no plausible claims whatsoever.

          So if you can't think of any way that you could

amend your complaint to make it more plausible than it

is right now, and if the complaint on which Mr. Kinney's

10:17AM   case seems to be very closely patterned was deemed at

the end of the day against this same defendant to have

no plausibility, why should we put both parties to the

time and expense of pursuing this case any further?

          MR. THRASH:  I'm not exactly certain about

10:17AM   Brazil, but I'm thinking the Brazil issue dealt with the

damages and the damage calculations that pertain

peculiarly to the consumer, the consumer laws in

California.  And because of that, I don't think the

Court -- I don't think -- and I may be wrong, but I

10:18AM   don't think the Court addressed the liability issues in

1    that case, and I would really need to go back and look

2    at that <u>Brazil</u> case in more detail to really be able to

3    discuss that with the Court, your Honor.

4            THE COURT:  All right.  I think you've

10:18AM  5    addressed the issues that I'm concerned with.  Is there

6    anything else that you'd like to add?

7            MR. THRASH:  Well, your Honor, I'd like to

8    address the implied warranty and merchantability.

9            THE COURT:  Okay.

10:18AM 10            MR. THRASH:  You know, the Myers versus Malone

11    and Hyde case, the Eighth Circuit case, it was the sale

12    of a misbranded product, and it wasn't the fact that the

13    apples were not apples and the apple juice wasn't apple

14    juice.  It was the fact that -- or that it was good

10:18AM 15    food, it was good to eat, there was nothing wrong with

16    the food.

17            It was misbranded because the weight

18    requirement of the FDA regulations was not met in the

19    product, and because of that, the Court said that even

10:19AM 20    though the food was good, or good food, it was

21    misbranded and not merchantable because it was

22    underweight, because it was misbranded.  For whatever

23    reason it was misbranded, it became unmerchantable.

24    And --

10:19AM 25            THE COURT:  That's the Malone v. Hyde case?

1          MR. THRASH:  Correct.  Myers versus Malone v.

2    Hyde, yes, sir.  And in our complaints we allege that

3    because of the misbranding that Dole and ConAgra both

4    violated the implied warranty of merchantability, or

10:19AM  5    fitness for a particular purpose, because the product

6    was unmerchantable.  And the Court said if it's

7    unmerchantable, the product has no value.  You can't

8    sell it, you can't possess it, and that's what the

9    Eighth Circuit said.

10:20AM  10          It said it's not subject to being sold or

11   possessed because it's unmerchantable and so we think

12   there is a very, very good claim under the implied

13   warranty of merchantability.

14          THE COURT:  But again, that goes to the notion

10:20AM  15   that you're alleging there was some sort of statutory

16   non- -- there is some noncompliance with a labeling

17   statute, and even if it is a technical defect, it

18   renders the whole thing worthless.  I get that.

19          Separate and apart from that argument, these

10:20AM  20   Dole peaches or Dole pineapples, when you open up the

21   container, they taste like peaches and the juice is

22   real, real juice.  And you're not disputing that if you

23   liked pineapples or peaches that you wouldn't like

24   Dole's pineapples or peaches.

10:21AM  25          MR. THRASH:  But that's the same case with

1   Myers and Malone.

2         THE COURT:   I thought you just told me that the

3   defect there was that it failed to comply with a net

4   weight requirement, which was a technical defect.

10:21AM   5         MR. THRASH:   It did.   And in this situation

6   they failed to -- or their label was false or misleading

7   in any particular, which is a misbranding of the

8   product, just like the weight, the technicality on the

9   weight limit was a misbranding.   And if it is a

10:21AM   10   misbranding, it is of no value.   It is not merchantable

11   for either reason.

12         So if we have an opportunity to present the

13   case that selling the Dole products as all natural

14   misbrands that product because the FDA said you cannot

10:22AM   15   do that if it's got a synthetic or artificial

16   preservative and so that misbrands the product just like

17   the technicality that the weight is not what it should

18   have been.

19         So you have -- each one of those situations,

10:22AM   20   you have a misbranded product.   And if you have a

21   misbranded product, it makes it unmerchantable and

22   therefore of no value.   And the Eighth Circuit said if

23   it's misbranded, it's a breach of their implied warranty

24   of merchantability.   And so we think that's a very good

10:22AM   25   case that we haven't discussed, and I just wanted to

1    discuss that with the Court.

2            THE COURT:  All right.  I'll look at that

3    further.

4            Anything else?

10:22AM   5        MR. THRASH:  No, sir.

6            THE COURT:  All right.  Thank you, Mr. Thrash.

7            Mr. Pekron, would you like to briefly respond

8    before we convert this to a certification hearing?

9            MR. PEKRON:  Yes.  Your Honor, "briefly" was

10:22AM  10    the word that was just about ready to come out of my

11    mouth.

12            THE COURT:  All right.

13            MR. PEKRON:  Very briefly, your Honor, on the

14    implied warranty of merchantability.  The Myers case was

10:23AM  15    from the 1940s.  The Arkansas Supreme Court since that

16    time has made very clear what the implied warranty of

17    merchantability means.  And as this Court said in the

18    ConAgra cases, that means that the product cannot be fit

19    for the ordinary purpose for which such goods are used.

10:23AM  20    That's how the Arkansas Supreme Court has defined that

21    cause of action.

22            Here, as this Court has recognized previously,

23    if you think you're getting fruit and you got fruit,

24    that's enough to get past the implied warranty of

10:23AM  25    merchantability.  Very low standard.

1          I just wanted to talk about <u>Brazil</u> very quickly

2     just to clear a few things up there.  Your Honor, there

3     were two rulings in the <u>Brazil</u> case that we've relied

4     upon in our briefing.  There was an order from November

10:24AM    5     of last year decertifying the class for reasons that

6     we'll talk about more later, but they had to do with,

7     essentially with Dr. Mays' partner Dr. Capps' inability

8     to provide a viable damages theory.

9          But there was also a summary judgment and

10:24AM   10     that's what I believe you were asking about.  And I just

11     wanted -- you were asking about whether these cases were

12     similar or identical.

13          <u>Brazil</u> sued, at the time summary judgment, he's

14     at ten products at issue.  Nine of the ten are at issue

10:24AM   15     here.  And I'm just reading from the summary judgment

16     very briefly:  <u>Brazil</u> contends that all ten of the

17     products listed above contain the label statement "all

18     natural fruit," which <u>Brazil</u> alleges is misleading

19     because all ten products contain ascorbic acid, commonly

10:24AM   20     known as Vitamin C, and citric acid, both allegedly

21     synthetic ingredients.

22          Same products, same allegations.

23          And then ultimately the Court held:  The Court

24     has found no genuine dispute as to whether Dole's "all

10:25AM   25     natural fruit" label was misleading to reasonable

1    consumers.

2            That's the same case.

3            The very last thing I wanted to just mention

4    very briefly, your Honor, because I think there was a

10:25AM  5    little confusion in the discussion was about the organic

6    issue.  We're not here saying that these specific

7    products could be labeled organic because as you know,

8    organic has to be grown a certain way without pesticides

9    and things like that.  But that was never the issue.

10:25AM  10           What was the issue is that ascorbic and citric

11   acid can be in products labeled as organic, and that's

12   relevant here because under this informal policy from

13   the FDA that plaintiffs essentially base their entire

14   case on, the question is what would reasonable consumers

10:25AM  15   expect to be in a natural product.  And if citric and

16   ascorbic acid can be in an organic product, certainly a

17   reasonable consumer would assume that they could be in a

18   natural product.

19           THE COURT:  All right.

10:26AM  20           MR. PEKRON:  And that's all I had.

21           THE COURT:  I recall reading about that in a

22   footnote.  So I appreciate you expanding on that.

23           MR. PEKRON:  Thank you, your Honor.

24           THE COURT:  All right.  Well, the Court is

10:26AM  25   going to take Dole's motion for judgment on the

1    pleadings under advisement.  It is 10:25.  Let's take a

2    ten-minute break, and at 10:35 we will reconvene, and

3    what I anticipate that we will do is just have a

4    consolidated hearing on these class certification issues

10:26AM   5    in the three cases that are before the Court today.

6    We're in recess for ten minutes.

7              (Proceedings recessed at 10:26 a.m.)

1          CERTIFICATE OF OFFICIAL REPORTER

2

3          I, Dana Hayden, Federal Official Realtime Court

4    Reporter, in and for the United States District Court

5    for the Western District of Arkansas, do hereby certify

6    that pursuant to Section 753, Title 28, United States

7    Code that the foregoing is a true and correct transcript

8    of the stenographically reported proceedings held in the

9    above-entitled matter and that the transcript page

10   format is in conformance with the regulations of the

11   Judicial Conference of the United States.

12          Dated this 18th day of September 2015.

13

14

15

16          _____

17          Dana Hayden, CCR, RMR, CRR
            Federal Official Court Reporter
18

19

20

21

22

23

24

25

**'** 

**'all** [4] - 8:20, 10:16, 18:20, 19:17

**1**

**100** [6] - 11:10, 11:22, 12:1, 27:2, 33:12, 33:15
**10:00** [3] - 4:3, 4:8, 5:9
**10:25** [1] - 54:1
**10:26** [1] - 54:7
**10:35** [1] - 54:2
**1101** [1] - 2:8
**111** [1] - 2:13
**18th** [1] - 55:12
**1900** [1] - 2:13
**1940s** [1] - 51:15

**2**

**20** [1] - 15:14
**2015** [2] - 1:14, 55:12
**28** [1] - 1:14, 55:6

**3**

**30-page** [1] - 15:14
**317** [1] - 36:16
**3333** [1] - 2:4
**35** [1] - 1:25

**4**

**4-2-317** [2] - 21:21, 22:1
**479-845-2198** [1] - 2:5
**479-845-3305** [1] - 2:5

**5**

**501-374-1058** [1] - 2:9
**501-374-2222** [1] - 2:9
**501-379-1726** [1] - 2:14
**501-379-3826** [1] - 2:15
**5:14-CV-05182** [2] - 1:5, 3:4

**6**

**603** [1] - 2:4

**7**

**72201** [2] - 2:8, 2:14
**72701** [1] - 1:25
**72758** [1] - 2:4

**753** [1] - 55:6

**8**

**8** [1] - 18:14

**9**

**9(b** [20] - 7:10, 13:1, 14:16, 15:4, 15:8, 15:9, 15:22, 17:9, 17:13, 17:14, 17:17, 18:1, 23:13, 23:20, 25:4, 43:7, 43:14, 43:20, 45:19
**9(b)** [4] - 6:21, 7:4, 20:22, 44:20
**9:04** [1] - 1:14

**A**

**a.m** [2] - 1:14, 54:7
**able** [7] - 4:8, 4:14, 28:14, 42:13, 43:18, 45:23, 48:2
**above-entitled** [1] - 55:9
**absolutely** [3] - 4:15, 47:10, 47:11
**accentuate** [1] - 41:23
**accentuated** [1] - 36:19
**accused** [1] - 15:16
**acid** [37] - 8:11, 8:18, 9:2, 10:7, 10:8, 13:21, 14:7, 14:8, 15:7, 15:21, 15:23, 20:2, 20:4, 22:24, 33:6, 33:9, 37:14, 37:18, 37:19, 38:12, 38:13, 38:14, 38:19, 42:4, 44:8, 44:9, 45:25, 46:1, 52:19, 52:20, 53:11, 53:16
**acids** [17] - 8:6, 8:9, 14:3, 14:12, 14:13, 14:15, 14:18, 14:20, 14:24, 15:1, 17:4, 19:9, 20:11, 25:24, 25:25, 26:2, 38:25
**Act** [1] - 6:7
**act** [4] - 6:9, 23:25, 24:1, 44:12
**action** [12] - 13:6, 13:8, 21:2, 23:4, 23:22, 23:23, 36:13, 38:24, 43:9, 45:18, 51:21
**actions** [1] - 24:1
**actor's** [1] - 15:12

**acts** [1] - 15:16
**add** [6] - 20:24, 27:20, 28:1, 28:5, 34:10, 48:6
**added** [7] - 25:25, 27:12, 28:10, 41:25, 42:3, 42:4
**address** [1] - 48:8
**addressed** [2] - 47:25, 48:5
**admitted** [1] - 39:16
**admittedly** [1] - 15:7
**adopted** [3] - 13:13, 31:11, 31:17
**ADTPA** [1] - 23:16
**advance** [1] - 17:10
**advertising** [1] - 40:21
**advisement** [1] - 54:1
**affidavits** [1] - 44:17
**agree** [5] - 11:3, 13:7, 23:14, 26:21, 36:21
**aisle** [1] - 35:21
**aisles** [1] - 35:4
**ALL** [1] - 1:4
**all-natural** [1] - 33:16
**allegation** [2] - 14:25, 45:20
**allegations** [16] - 13:5, 13:8, 14:23, 17:23, 19:4, 19:18, 24:9, 43:13, 43:14, 43:19, 43:21, 44:3, 44:17, 44:18, 44:19, 52:22
**allege** [8] - 16:18, 19:21, 21:13, 21:14, 45:23, 46:8, 49:2
**alleged** [9] - 13:24, 15:13, 16:20, 16:23, 17:21, 21:16, 23:12, 44:5, 44:11
**allegedly** [1] - 52:20
**alleges** [1] - 52:18
**alleging** [4] - 15:9, 38:2, 45:10, 49:15
**allow** [1] - 29:7
**allowed** [1] - 9:14
**alone** [2] - 12:6, 12:8
**amend** [2] - 43:11, 47:13
**amended** [1] - 43:19
**analogy** [1] - 29:12
**analysis** [3] - 5:8, 8:3, 18:15
**AND** [1] - 1:3
**anecdotally** [1] - 28:16
**angle** [1] - 47:1
**answer** [2] - 24:4, 26:24
**anticipate** [2] - 5:2,

54:3
**anyway** [2] - 26:1, 30:3
**apart** [1] - 49:19
**APPEARANCES** [1] - 2:1
**APPEARING** [2] - 2:2, 2:11
**apple** [7] - 25:18, 25:19, 26:16, 45:4, 48:13
**apple-flavored** [1] - 26:16
**apples** [4] - 26:9, 45:3, 48:13
**applicable** [3] - 6:7, 23:13, 23:16
**applied** [1] - 17:19
**applies** [2] - 6:20, 7:11
**apply** [6] - 6:12, 23:20, 24:5, 24:21, 25:6
**appreciate** [1] - 53:22
**argue** [3] - 5:11, 25:13, 32:12
**arguing** [2] - 4:21, 37:24
**argument** [12] - 6:1, 6:17, 6:25, 7:5, 10:2, 17:12, 17:14, 27:1, 37:5, 37:8, 49:19
**Arkansas** [25] - 1:25, 2:4, 2:8, 2:14, 6:7, 21:11, 21:22, 22:5, 22:16, 25:5, 25:9, 30:11, 30:12, 31:3, 31:10, 31:11, 32:8, 37:2, 38:1, 39:9, 51:15, 51:20, 55:6
**ARKANSAS** [2] - 1:1, 1:15
**articulate** [1] - 32:10
**artificial** [24] - 13:18, 25:12, 25:19, 27:20, 28:2, 28:6, 29:10, 30:2, 31:14, 31:22, 32:23, 33:4, 37:20, 38:12, 38:18, 39:3, 39:6, 41:17, 42:5, 42:23, 44:7, 44:9, 45:24, 50:15
**ascorbic** [35] - 8:5, 8:8, 8:10, 8:18, 9:2, 10:7, 10:8, 13:21, 14:6, 14:7, 14:12, 14:13, 14:14, 14:17, 14:20, 14:24, 15:1, 15:7, 15:21, 15:23, 19:9, 20:2, 20:4, 20:11, 22:24, 37:18, 38:12, 38:14, 38:19,

42:4, 44:9, 46:1, 52:19, 53:10, 53:16
**aspect** [1] - 29:19
**assert** [1] - 18:1
**asserted** [1] - 7:23
**assertions** [1] - 44:18
**assume** [3] - 40:6, 40:8, 53:17
**assumed** [1] - 27:1
**attach** [1] - 11:4
**attached** [1] - 46:2
**attracts** [1] - 16:9
**attribute** [2] - 29:20, 36:20
**attributes** [1] - 41:5
**August** [1] - 1:14
**avoid** [1] - 47:3
**aware** [3] - 4:17, 5:15, 6:3

**B**

**bad** [3] - 20:9, 45:4
**base** [1] - 53:13
**based** [2] - 7:2, 23:15
**became** [1] - 48:23
**becomes** [2] - 27:21, 41:2
**beef** [1] - 44:18
**BEFORE** [1] - 1:13
**begin** [2] - 8:3, 9:8
**beginning** [1] - 4:2
**behalf** [1] - 36:17
**BEHALF** [3] - 1:3, 2:2, 2:11
**believes** [1] - 42:21
**bench** [1] - 5:3
**beside** [2] - 36:2, 40:25
**best** [1] - 29:4
**better** [2] - 12:12, 36:1
**between** [3] - 21:9, 35:11, 38:24
**big** [3] - 10:5, 16:9, 34:6
**bigger** [1] - 8:14
**biggest** [1] - 8:15
**bit** [1] - 25:23
**boiling** [1] - 34:6
**bold** [2] - 9:24, 10:1
**bottomed** [4] - 23:25, 24:1, 24:5, 32:8
**Brazil** [21] - 10:14, 10:17, 10:19, 10:22, 46:13, 46:16, 46:17, 46:18, 46:20, 47:5, 47:6, 47:7, 47:9, 47:20, 48:2, 52:1, 52:3, 52:13, 52:16, 52:18

2

**breach** [9] - 23:1, 24:6, 24:18, 36:19, 37:21, 38:3, 44:25, 50:23
**break** [1] - 54:2
**briefed** [3] - 3:23, 6:2, 6:16
**briefing** [5] - 5:12, 6:16, 6:23, 21:3, 52:4
**briefly** [5] - 51:7, 51:9, 51:13, 52:16, 53:4
**briefs** [1] - 17:24
**bring** [1] - 43:19
**broader** [1] - 31:8
**BROOKS** [1] - 1:13
**brought** [1] - 46:25
**burden** [1] - 13:1
**Burrow** [1] - 2:13
**buy** [4] - 34:5, 35:4, 40:15, 40:18
**byproduct** [1] - 27:22

## C

**calculations** [1] - 47:21
**California** [3] - 46:14, 46:24, 47:23
**canister** [1] - 25:15
**canned** [1] - 35:24
**canning** [2] - 34:4, 34:8
**cannot** [11] - 8:9, 15:22, 28:5, 31:4, 31:15, 31:21, 31:22, 36:5, 41:4, 50:14, 51:18
**capable** [1] - 12:7
**Capps'** [1] - 52:7
**caption** [1] - 23:20
**cared** [1] - 20:13
**careful** [1] - 11:7, 26:14
**case** [46] - 3:2, 3:24, 4:4, 5:8, 6:8, 7:21, 10:19, 12:2, 17:24, 18:4, 23:4, 24:8, 26:18, 26:25, 27:10, 32:11, 35:5, 36:11, 42:19, 42:21, 44:22, 44:24, 45:3, 46:13, 46:16, 46:17, 46:18, 47:2, 47:5, 47:7, 47:9, 47:15, 47:18, 48:1, 48:2, 48:11, 48:25, 49:25, 50:13, 50:25, 51:14, 52:3, 53:2, 53:14
**CASE** [1] - 1:5

**cases** [10] - 4:10, 6:4, 6:11, 6:18, 21:4, 24:21, 46:24, 51:18, 52:11, 54:5
**catchall** [1] - 31:9
**caused** [3] - 40:14, 40:17, 40:22
**causes** [3] - 21:2, 23:4, 36:13
**CCR** [2] - 1:24, 55:17
**center** [1] - 4:6
**Center** [3] - 2:13, 6:4, 6:18
**cert** [1] - 5:6
**certain** [9] - 6:5, 19:22, 28:13, 36:20, 41:5, 45:6, 47:19, 53:8
**certainly** [9] - 4:13, 4:25, 6:10, 7:7, 7:9, 12:25, 24:21, 25:9, 53:16
**CERTIFICATE** [1] - 55:1
**certification** [8] - 4:1, 4:5, 4:12, 4:21, 24:25, 47:4, 51:8, 54:4
**certified** [1] - 4:22
**certify** [1] - 55:5
**Chad** [2] - 2:12, 3:14
**challenge** [2] - 9:9, 12:1
**challenged** [1] - 11:25
**challenging** [1] - 19:2
**changed** [1] - 46:12
**characteristic** [1] - 36:20
**cheaper** [1] - 40:20
**chemical** [2] - 31:14, 39:3
**chemicals** [7] - 28:13, 29:3, 32:17, 32:19, 33:15, 42:5
**Chin** [1] - 18:4
**choose** [1] - 9:15
**Christopher** [1] - 3:3
**CHRISTOPHER** [1] - 1:3
**Circuit** [5] - 3:11, 44:22, 48:11, 49:9, 50:22
**circumstances** [1] - 15:11
**cited** [1] - 31:10
**citric** [39] - 8:5, 8:9, 8:11, 8:18, 9:2, 10:7, 10:8, 13:20, 14:6, 14:8, 14:12, 14:13, 14:14, 14:17, 14:20,

14:24, 14:25, 15:6, 15:21, 15:22, 19:9, 20:2, 20:3, 20:11, 22:24, 33:5, 33:6, 33:9, 37:14, 37:18, 38:12, 38:13, 38:19, 42:4, 44:8, 45:25, 52:20, 53:10, 53:15
**claim** [13] - 8:9, 8:16, 18:18, 21:7, 21:18, 21:19, 22:7, 22:9, 22:20, 22:22, 36:14, 42:12, 49:12
**claimed** [1] - 12:2
**claiming** [3] - 20:6, 20:7, 42:19
**claims** [8] - 4:22, 7:11, 17:25, 18:5, 25:1, 32:7, 47:3, 47:11
**clarifying** [1] - 9:16
**class** [9] - 4:1, 4:5, 4:11, 4:21, 5:6, 24:25, 47:3, 52:5, 54:4
**clear** [5] - 9:17, 22:5, 25:15, 51:16, 52:2
**clearly** [2] - 8:12, 10:5
**closely** [1] - 47:15
**code** [1] - 36:16
**Code** [1] - 55:7
**color** [3] - 34:10, 34:20, 41:18
**com** [1] - 27:18
**coming** [2] - 12:11, 30:6
**command** [3] - 28:18, 39:16, 40:5
**commonly** [2] - 14:8, 52:19
**companies** [1] - 31:21
**company** [1] - 41:4
**compared** [1] - 16:12
**comparison** [2] - 27:19, 33:12
**complaint** [28] - 7:2, 12:13, 12:23, 13:25, 14:14, 14:22, 14:23, 15:14, 15:19, 18:12, 18:23, 23:13, 23:20, 24:9, 43:7, 43:8, 43:13, 43:15, 43:17, 43:19, 45:9, 46:3, 46:19, 46:21, 47:4, 47:13, 47:14
**complaints** [3] - 46:22, 46:23, 49:2
**complete** [1] - 37:21
**completely** [4] - 5:8, 6:23, 18:21, 36:22
**compliance** [1] - 7:3

**comply** [1] - 50:3
**ConAgra** [11] - 4:6, 5:16, 11:13, 21:4, 21:20, 23:4, 35:16, 35:25, 49:3, 51:18
**concede** [6] - 25:23, 26:2, 26:5, 26:19, 27:2, 27:3
**conceded** [5] - 27:15, 33:20, 39:24, 40:8, 40:10
**concerned** [1] - 48:5
**concisely** [1] - 7:1
**conclude** [4] - 43:4, 43:12, 43:18, 45:16
**conclusory** [1] - 14:25
**conducive** [1] - 24:25
**Conference** [1] - 55:11
**conformance** [1] - 55:10
**confused** [1] - 37:24
**confusion** [1] - 53:5
**congratulations** [1] - 3:10
**consideration** [1] - 3:23
**consist** [1] - 26:6
**consolidate** [1] - 4:10
**consolidated** [1] - 54:4
**constitutes** [2] - 11:3, 12:8
**constituting** [1] - 15:11
**consumer** [12] - 12:6, 12:22, 13:3, 13:19, 13:21, 16:10, 35:10, 35:14, 47:22, 53:17
**consumers** [7] - 8:10, 9:21, 13:25, 22:25, 40:18, 53:1, 53:14
**contain** [9] - 15:21, 20:3, 26:9, 27:4, 27:6, 44:7, 45:6, 52:17, 52:19
**contained** [3] - 9:10, 16:6, 22:24
**container** [2] - 39:12, 49:21
**containers** [3] - 35:2, 35:18, 35:19
**contains** [9] - 20:11, 27:17, 31:13, 36:18, 39:17, 40:4, 40:9, 41:21, 41:23
**contend** [6] - 6:20, 7:1, 12:20, 18:11, 26:1, 43:8
**contended** [1] - 43:6

**contends** [3] - 46:10, 47:8, 52:16
**content** [1] - 27:6
**contentions** [1] - 24:15
**context** [4] - 4:21, 4:24, 36:13, 38:24
**contrary** [1] - 19:8
**controlling** [1] - 29:17
**conversation** [1] - 5:13
**convert** [1] - 51:8
**copies** [1] - 46:2
**correct** [14] - 7:9, 10:24, 13:4, 24:16, 24:17, 31:6, 32:3, 32:4, 33:19, 37:4, 40:1, 40:2, 40:5, 55:7
**Correct** [1] - 49:1
**counsel** [3] - 5:16, 7:5, 46:24
**country** [1] - 30:25
**court** [1] - 3:19
**COURT** [93] - 1:1, 3:1, 3:10, 3:13, 3:16, 3:18, 3:22, 4:16, 5:1, 5:18, 5:20, 5:22, 9:23, 10:12, 10:19, 10:22, 10:25, 11:10, 11:15, 11:19, 11:21, 12:11, 13:4, 13:12, 14:3, 15:8, 16:8, 17:12, 18:9, 19:19, 20:23, 22:9, 22:14, 23:6, 23:11, 23:19, 24:8, 25:2, 25:22, 26:5, 26:11, 27:3, 27:9, 27:14, 28:8, 28:16, 28:24, 29:11, 30:4, 30:24, 31:2, 31:16, 31:24, 32:6, 32:25, 33:17, 33:20, 33:23, 34:3, 34:23, 36:12, 37:1, 37:5, 37:8, 37:23, 38:7, 38:15, 38:22, 39:7, 39:24, 40:3, 40:7, 41:3, 41:20, 43:3, 44:1, 45:8, 46:2, 46:6, 46:10, 46:18, 47:8, 48:4, 48:9, 48:25, 49:14, 50:2, 51:2, 51:6, 51:12, 53:19, 53:21, 53:24
**Court** [36] - 1:24, 3:2, 4:24, 6:4, 9:19, 10:14, 10:17, 17:24, 23:3, 29:23, 42:16, 43:4, 43:10, 43:12,

43:17, 44:16, 44:25, 45:16, 47:9, 47:24, 47:25, 48:3, 48:19, 49:6, 51:1, 51:15, 51:17, 51:20, 51:22, 52:23, 53:24, 54:5, 55:3, 55:4, 55:17
**Court's** [8] - 4:17, 6:6, 6:10, 13:15, 21:4, 21:20, 23:16, 27:1
**courts** [1] - 12:4
**Courts** [1] - 17:19
**covers** [1] - 45:9
**cpekron@qgtb.com** [1] - 2:15
**crafting** [1] - 46:19
**create** [1] - 17:18
**CRR** [2] - 1:24, 55:17
**cup** [2] - 25:15, 25:16
**cure** [1] - 45:20
**customer** [3] - 16:15, 36:5, 41:7

## D

**damage** [1] - 47:21
**damaged** [1] - 24:14
**damages** [5] - 38:4, 42:17, 43:2, 47:21, 52:8
**Dana** [3] - 1:24, 55:3, 55:17
**Dated** [1] - 55:12
**dealt** [2] - 44:22, 47:20
**deceitful** [2] - 24:1, 46:7
**deceive** [1] - 34:15
**deceived** [1] - 7:14
**deceives** [1] - 13:3
**deceiving** [1] - 16:2
**deception** [2] - 12:8, 15:4, 32:7
**deceptive** [20] - 7:16, 7:17, 8:2, 8:4, 8:5, 9:16, 15:16, 15:20, 16:1, 16:3, 19:13, 19:14, 27:10, 28:4, 29:18, 30:10, 32:10, 33:1, 42:22, 44:12
**Deceptive** [1] - 6:7
**deceptively** [1] - 40:17
**decertifying** [1] - 52:5
**decided** [1] - 12:18
**decision** [1] - 9:22
**deemed** [1] - 47:15
**defect** [3] - 49:17, 50:3, 50:4
**defects** [1] - 45:21
**defendant** [2] - 1:8, 47:16

**DEFENDANT** [1] - 2:11
**defendants** [1] - 3:13
**defined** [1] - 51:20
**definitely** [1] - 17:18
**definition** [10] - 10:15, 12:10, 13:2, 13:10, 25:8, 29:15, 29:17, 30:7, 31:18, 32:2
**definitions** [4] - 10:13, 11:4, 12:21, 13:13
**defrauded** [1] - 7:15
**demonstrate** [1] - 43:9
**describe** [1] - 29:19
**descriptive** [1] - 22:2
**designed** [1] - 16:15
**despite** [2] - 16:5, 31:24
**detail** [2] - 7:15, 48:2
**difference** [2] - 35:11, 35:15
**differences** [3] - 4:12, 4:14, 21:5
**different** [3] - 18:21, 45:14
**differentiate** [1] - 38:23
**differently** [2] - 17:7, 17:8
**direct** [1] - 21:12
**directly** [2] - 21:13, 21:16
**disagree** [4] - 12:17, 23:14, 36:21, 36:22
**disclaim** [1] - 9:25
**disclose** [4] - 38:9, 38:11, 38:20, 41:24
**disclosed** [8] - 8:12, 8:17, 9:11, 9:12, 15:23, 17:5, 19:5, 20:12
**discovered** [1] - 35:25
**discuss** [4] - 6:15, 21:20, 48:3, 51:1
**discussed** [1] - 50:25
**discussing** [1] - 6:13
**discussion** [2] - 5:14, 53:5
**dismiss** [1] - 10:23
**dismissed** [5] - 7:2, 10:22, 12:23, 17:25, 18:5
**displayed** [1] - 10:2
**dispute** [1] - 52:24
**disputing** [1] - 49:22
**distinction** [1] - 35:17
**distinguishing** [1] - 11:7
**district** [1] - 18:4
**District** [3] - 9:19,

55:4, 55:5
**DISTRICT** [2] - 1:1, 1:1
**DIVISION** [1] - 1:2
**docket** [2] - 3:4, 4:11
**DOLE** [1] - 1:7
**Dole** [34] - 3:3, 5:25, 6:16, 11:19, 11:21, 21:9, 21:13, 21:15, 21:16, 22:21, 22:23, 24:9, 25:9, 28:19, 29:18, 30:24, 32:25, 35:16, 35:25, 36:17, 38:23, 39:11, 39:18, 40:7, 40:12, 43:5, 44:12, 45:21, 46:10, 47:8, 49:3, 49:20, 50:13
**Dole's** [11] - 3:24, 16:16, 23:12, 26:18, 27:10, 30:8, 32:10, 38:7, 49:24, 52:24, 53:25
**dollar** [1] - 39:21
**done** [3] - 19:6, 28:7, 32:3
**down** [2] - 25:22, 30:6
**Dr** [3] - 44:16, 52:7
**drafting** [1] - 46:21
**drill** [1] - 25:22
**drinking** [1] - 33:17
**dump** [1] - 33:13
**dumped** [3] - 25:20, 32:20, 33:10
**duty** [8] - 14:14, 22:21, 22:22, 23:1, 38:3, 38:8

## E

**East** [1] - 1:25
**east** [1] - 34:24
**eat** [2] - 30:20, 48:15
**eating** [1] - 34:13
**effect** [4] - 9:25, 46:11, 46:13, 46:25
**Eighth** [5] - 3:11, 44:22, 48:11, 49:9, 50:22
**either** [4] - 19:24, 35:4, 36:8, 50:11
**elaborate** [1] - 44:14
**element** [1] - 21:17
**elements** [4] - 7:12, 22:20, 24:20
**emphasis** [1] - 20:16
**emphasize** [1] - 41:5
**end** [4] - 17:6, 20:5, 34:24, 47:16
**enriched** [4] - 21:16, 39:11, 39:19, 40:12

**enrichment** [11] - 21:7, 21:10, 21:18, 23:17, 24:7, 24:22, 24:23, 39:8, 42:12, 42:15, 42:18
**entering** [1] - 23:3
**entire** [2] - 10:17, 53:13
**entirety** [2] - 20:11, 23:5
**entitled** [7] - 8:21, 22:7, 23:5, 27:5, 40:10, 45:15, 55:9
**envision** [1] - 43:21
**equitable** [1] - 24:22
**especially** [4] - 15:6, 19:1, 21:7, 22:22
**essential** [2] - 7:12, 24:15
**essentially** [2] - 52:7, 53:13
**evidence** [2] - 22:18, 47:10
**exact** [4] - 10:15, 22:1, 40:19, 47:2
**exactly** [3] - 28:6, 40:19, 47:19
**example** [2] - 17:19, 17:23
**except** [1] - 7:25
**exclusion** [1] - 21:24
**exclusively** [2] - 17:13, 18:10
**expanding** [1] - 53:22
**expect** [4] - 13:19, 13:22, 13:25, 53:15
**expense** [1] - 47:18
**experience** [2] - 27:7, 35:9
**expert** [1] - 14:11
**explain** [4] - 4:21, 14:14, 14:23, 41:6
**explanation** [2] - 30:8, 43:16, 45:11
**express** [9] - 21:19, 22:6, 22:9, 22:10, 23:18, 24:6, 36:13, 37:9
**expressly** [1] - 23:21
**extent** [3] - 6:11, 17:2, 35:8
**extra** [1] - 43:21

## F

**facial** [4] - 6:19, 7:3, 7:19, 8:23
**facially** [4] - 9:7, 43:9, 43:16, 45:17
**fact** [17] - 6:6, 8:16,

9:4, 12:9, 13:17, 16:5, 16:19, 19:5, 19:24, 25:11, 25:13, 31:3, 33:21, 41:23, 44:13, 48:12, 48:14
**facts** [2] - 6:8, 7:16
**factual** [3] - 24:8, 44:18, 45:24
**fail** [2] - 12:13, 16:24
**failed** [4] - 7:18, 18:6, 50:3, 50:6
**fails** [3] - 8:2, 18:16, 18:17
**fall** [1] - 6:8
**false** [11] - 10:5, 16:19, 24:9, 24:11, 25:7, 27:9, 30:13, 37:10, 40:21, 44:4, 50:6
**familiar** [1] - 46:16
**far** [1] - 45:9
**Fax** [3] - 2:5, 2:9, 2:15
**FAYETTEVILLE** [2] - 1:2, 1:15
**Fayetteville** [1] - 1:25
**FDA** [23] - 13:14, 13:16, 28:2, 28:4, 28:8, 29:24, 30:4, 30:6, 31:7, 31:8, 31:11, 31:12, 31:16, 31:25, 32:9, 36:5, 37:3, 44:11, 45:5, 48:18, 50:14, 53:13
**FDA's** [1] - 32:3
**federal** [4] - 29:7, 29:24, 31:5, 39:9
**Federal** [2] - 1:24, 55:3, 55:17
**few** [2] - 35:3, 52:2
**field** [1] - 36:9
**figure** [1] - 26:14
**Figy** [1] - 17:24
**filed** [4] - 5:24, 15:15, 28:3
**fine** [3] - 4:25, 9:25, 41:24
**Firm** [2] - 2:3, 2:7
**firm** [2] - 12:10, 32:22
**firmer** [1] - 41:18
**firmness** [1] - 34:21
**first** [4] - 3:1, 3:24, 16:24, 23:13
**fit** [1] - 51:18
**fitness** [1] - 49:5
**fixed** [1] - 12:10
**flavored** [11] - 26:7, 26:16, 26:17, 26:23, 27:6, 27:17, 33:17, 39:13, 40:1, 40:11
**flavoring** [3] - 39:17,

40:1, 40:4
**flimsy** [1] - 35:2
**focus** [2] - 6:1, 12:20
**followed** [1] - 29:6
**food** [10] - 37:2, 37:3, 39:9, 44:24, 45:3, 48:15, 48:16, 48:20
**foods** [4] - 4:6, 27:23, 27:24
**FOODS** [1] - 1:7
**footnote** [1] - 53:22
**FOR** [1] - 1:12
**force** [1] - 13:17
**foregoing** [1] - 55:7
**foreign** [1] - 18:1
**formal** [1] - 32:2
**formally** [2] - 30:7, 31:17
**format** [1] - 55:10
**formerly** [1] - 31:19
**forward** [2] - 18:23, 19:3
**fraud** [12] - 6:20, 7:11, 7:13, 15:4, 15:10, 15:11, 17:21, 18:11, 18:12, 23:22, 24:5, 47:10
**fraudulent** [1] - 23:25
**fresh** [5] - 14:2, 34:25, 35:11, 35:18, 35:19
**front** [11] - 3:11, 8:20, 9:12, 10:4, 10:6, 20:17, 29:22, 31:25, 32:12, 36:24
**fruit** [71] - 7:22, 7:23, 7:25, 8:21, 8:23, 8:24, 8:25, 9:1, 9:5, 9:6, 11:8, 11:9, 11:13, 11:18, 11:22, 11:23, 11:25, 12:3, 13:24, 15:20, 16:20, 16:21, 16:22, 17:1, 19:7, 20:2, 20:8, 20:9, 21:24, 25:11, 25:14, 25:16, 25:17, 26:6, 26:7, 26:10, 26:21, 27:4, 27:6, 27:11, 27:13, 27:16, 27:17, 27:19, 28:9, 30:16, 30:18, 30:22, 32:14, 32:15, 32:16, 32:20, 35:1, 35:12, 35:24, 37:13, 39:17, 40:15, 41:23, 42:22, 44:7, 44:13, 51:23, 52:18, 52:25
**fruit'** [3] - 10:16, 18:20, 19:17
**fruit-flavored** [3] - 26:7, 27:6, 27:17

**fruits** [4] - 14:13, 26:7, 29:14, 34:25
**fully** [3] - 3:23, 38:9, 38:20
**futility** [1] - 44:1

### G

**Gabriele** [3] - 4:5, 6:3, 6:18
**Garland** [1] - 2:8
**garner** [1] - 28:21
**Gatorade** [4] - 33:12, 33:13, 33:16, 33:18
**gears** [1] - 43:3
**general** [6] - 12:5, 22:2, 22:3, 22:6, 31:9
**generalized** [1] - 17:22
**generally** [1] - 15:13
**gentlemen** [2] - 3:7, 3:19
**genuine** [2] - 33:24, 52:24
**given** [1] - 5:10
**goods** [1] - 51:19
**grant** [1] - 18:22
**great** [2] - 16:9, 34:6
**greater** [3] - 35:13, 40:23
**grievance** [2] - 15:17, 18:12
**grocery** [1] - 26:12
**Grooms** [1] - 2:13
**grounds** [1] - 18:17
**growing** [2] - 29:13, 34:3
**grown** [4] - 28:13, 29:2, 29:6, 53:8
**guess** [2] - 18:9, 23:19
**guidelines** [2] - 29:25, 44:11

### H

**handle** [1] - 4:24
**hang** [1] - 18:14
**hanging** [2] - 17:13, 18:10
**Harbor** [1] - 6:9
**hard** [1] - 19:23
**harmful** [1] - 20:8
**harmony** [1] - 21:22
**Harp's** [1] - 34:24
**hat** [3] - 17:13, 18:10, 18:14
**Hayden** [1] - 1:24, 55:3, 55:17
**hearing** [3] - 5:6, 51:8,

54:4
**HEARING** [1] - 1:11
**hefty** [1] - 28:18
**heightened** [4] - 6:19, 7:10, 17:18, 45:18
**heightens** [1] - 17:14
**held** [2] - 52:23, 55:8
**help** [1] - 12:20
**hereby** [1] - 55:5
**Hills** [1] - 2:4
**holding** [1] - 17:25
**Honor** [52] - 3:12, 3:15, 3:17, 3:20, 4:15, 5:16, 5:19, 7:8, 7:9, 7:18, 8:3, 8:14, 10:3, 10:14, 10:21, 11:6, 11:12, 11:20, 12:4, 12:9, 12:25, 13:15, 13:17, 14:5, 14:7, 15:18, 15:25, 16:17, 17:17, 18:8, 18:16, 20:5, 20:25, 21:19, 22:11, 23:10, 23:15, 24:3, 25:3, 26:8, 28:23, 31:6, 36:22, 38:6, 43:23, 48:3, 48:7, 51:9, 51:13, 52:2, 53:4, 53:23
**HONORABLE** [1] - 1:13
**hook** [3] - 9:23, 16:12, 16:15
**hour** [3] - 4:3, 4:9, 5:9
**Hyde** [4] - 44:22, 48:11, 48:25, 49:2

### I

**i.e** [1] - 24:11
**idea** [2] - 16:8, 23:25
**identical** [4] - 46:11, 46:13, 46:15, 52:12
**identified** [2] - 18:13, 45:21
**identifies** [1] - 16:10
**identify** [1] - 45:19
**identifying** [1] - 23:21
**ignore** [2] - 9:16, 20:19
**illegal** [3] - 42:9, 42:10, 42:20
**implied** [12] - 22:11, 23:18, 24:19, 44:23, 45:1, 48:8, 49:4, 49:12, 50:23, 51:14, 51:16, 51:24
**improper** [1] - 20:7
**inability** [1] - 52:7
**included** [1] - 37:16

**includes** [1] - 22:5
**incorrect** [1] - 20:20
**individual** [2] - 21:2, 24:21
**INDIVIDUALLY** [1] - 1:3
**industry** [3] - 38:22, 39:1, 39:5
**informal** [1] - 53:12
**information** [7] - 8:12, 8:16, 9:17, 9:21, 28:3, 29:13, 45:24
**informed** [2] - 8:10, 9:22
**ingredient** [21] - 8:8, 8:12, 9:13, 9:18, 9:20, 10:9, 15:24, 16:6, 17:5, 18:3, 19:10, 20:13, 26:3, 31:14, 37:20, 38:14, 38:16, 39:6, 41:17, 44:8
**ingredients** [10] - 18:2, 25:12, 25:20, 32:23, 33:2, 33:3, 36:18, 38:9, 42:24, 52:21
**inherently** [1] - 16:3
**instead** [1] - 40:15
**insufficient** [1] - 17:25
**intend** [1] - 41:6
**intended** [1] - 35:13
**intent** [2] - 15:12, 28:20
**interested** [2] - 15:9, 37:25
**interpretation** [9] - 10:12, 10:18, 11:1, 12:14, 12:16, 17:10, 30:8, 31:5
**interpretations** [1] - 10:11
**invitations** [1] - 32:1
**invite** [1] - 6:24
**Iqbal** [7] - 17:15, 18:15, 18:17, 18:24, 19:11, 43:15, 43:20
**isolation** [1] - 9:15
**issue** [16] - 6:15, 7:21, 12:18, 14:3, 16:24, 31:3, 43:24, 44:1, 44:6, 47:1, 47:20, 52:14, 53:6, 53:9, 53:10
**issues** [8] - 6:2, 6:14, 6:25, 24:24, 47:3, 47:25, 48:5, 54:4
**itself** [2] - 8:25, 15:22

### J

**jars** [2] - 34:5, 34:9
**judge** [1] - 46:9
**Judge** [2] - 3:9, 44:21
**JUDGMENT** [1] - 1:12
**judgment** [12] - 3:24, 4:19, 4:23, 5:25, 22:7, 23:3, 23:5, 43:6, 52:9, 52:13, 52:15, 53:25
**Judicial** [1] - 55:11
**juice** [32] - 11:22, 11:23, 25:16, 26:12, 26:13, 26:15, 26:19, 26:20, 26:21, 26:22, 27:2, 27:4, 27:16, 28:10, 33:15, 33:18, 33:21, 33:25, 39:13, 39:15, 39:25, 40:5, 40:9, 41:8, 41:13, 41:24, 42:2, 48:13, 48:14, 49:21, 49:22
**juices** [2] - 26:6, 26:7
**jury** [2] - 32:13, 42:21

### K

**keep** [3] - 14:1, 30:18, 32:22
**Kelly** [1] - 9:19
**Ken** [1] - 3:5
**ken@sheminlaw.com** [1] - 2:6
**Kenneth** [1] - 2:3
**kid** [1] - 34:4
**kind** [4] - 25:23, 26:13, 32:15, 35:2
**kinds** [2] - 29:2, 33:15
**KINNEY** [1] - 1:3
**Kinney** [8] - 3:3, 3:5, 7:2, 15:14, 24:10, 24:12, 24:15, 38:8
**Kinney's** [8] - 3:25, 10:12, 11:1, 29:16, 46:11, 46:19, 46:21, 47:14
**known** [3] - 24:13, 47:1, 52:20

### L

**label** [20] - 9:15, 11:8, 11:16, 11:21, 12:14, 17:11, 20:12, 28:9, 28:17, 28:20, 28:21, 29:22, 32:13, 36:17, 41:20, 44:12, 50:6, 52:17, 52:25
**labeled** [2] - 53:7,

53:11
**labeling** [16] - 21:25, 22:17, 25:6, 27:10, 30:13, 32:10, 37:2, 37:3, 39:9, 39:20, 39:21, 41:4, 44:4, 46:7, 49:16
**labels** [16] - 7:17, 7:21, 10:18, 11:10, 11:13, 11:17, 15:23, 16:14, 18:7, 19:12, 22:23, 26:14, 46:3, 46:4
**lack** [2] - 7:2, 7:3
**laid** [1] - 46:6
**language** [1] - 19:2, 20:18, 22:2, 22:3, 22:4, 22:6, 23:21
**large** [1] - 9:24
**larger** [1] - 31:4
**last** [7] - 30:18, 32:21, 34:19, 35:3, 35:19, 52:5, 53:3
**latter** [1] - 38:5
**Law** [2] - 2:3, 2:7
**law** [9] - 13:17, 21:11, 21:22, 22:5, 22:16, 25:5, 25:9, 30:12, 38:2
**laws** [1] - 47:22
**lawsuit** [1] - 46:11
**least** [3] - 13:13, 31:16, 32:2
**leave** [1] - 43:11
**legal** [1] - 23:24
**legally** [2] - 43:1
**lemons** [2] - 33:7, 37:15
**letters** [4] - 10:5, 10:8, 16:9, 31:20
**level** [3] - 8:23, 17:18, 36:9
**liability** [1] - 47:25
**lids** [1] - 34:5
**life** [3] - 35:7, 35:13, 35:14
**limit** [1] - 50:9
**limited** [2] - 47:2, 47:5
**link** [2] - 21:8, 21:12
**liquid** [4] - 26:15, 26:22, 39:13, 40:4
**list** [13] - 8:8, 8:13, 9:13, 9:20, 10:9, 15:24, 16:7, 17:5, 19:10, 20:13, 33:1, 33:2, 39:6
**listed** [4] - 15:24, 26:2, 33:4, 52:17
**listing** [1] - 36:18
**lists** [1] - 9:18

**literal** [1] - 19:1
**literally** [1] - 9:9
**LLC** [2] - 1:7, 3:3
**look** [6] - 8:7, 8:21, 26:14, 36:16, 48:1, 51:2
**looked** [1] - 11:15
**looking** [2] - 11:21, 27:23
**loosely** [1] - 13:13
**low** [1] - 51:25

**M**

**machine** [1] - 1:22
**maintain** [1] - 34:10
**Malone** [5] - 44:21, 48:10, 48:25, 49:1, 50:1
**manufactured** [1] - 33:9
**market** [5] - 29:7, 40:23, 40:24, 41:9
**marketable** [1] - 45:2
**marketed** [1] - 39:14
**marketing** [4] - 16:14, 33:1, 41:11, 41:12
**Mason** [2] - 34:5, 34:9
**matter** [4] - 9:24, 18:1, 25:24, 55:9
**matters** [2] - 3:2, 4:3
**mays'** [1] - 52:7
**mean** [5] - 4:9, 10:16, 18:7, 18:20, 20:3
**mean..** [1] - 19:17
**meaning** [3] - 7:24, 12:7, 28:13
**means** [5] - 7:12, 30:9, 43:16, 51:17, 51:18
**meant** [2] - 11:2, 25:17
**meet** [5] - 9:7, 12:14, 43:7, 43:13, 45:18
**mention** [1] - 53:3
**mentioned** [1] - 6:4
**merchantability** [9] - 44:23, 45:1, 48:8, 49:4, 49:13, 50:24, 51:14, 51:17, 51:25
**merchantable** [3] - 42:20, 48:21, 50:10
**merely** [10] - 19:21, 26:7, 26:15, 26:23, 27:6, 27:17, 36:19, 39:17, 39:25, 40:11
**merits** [2] - 10:20, 47:9
**Messrs** [2] - 2:12
**met** [1] - 48:18
**might** [7] - 11:4,

12:17, 12:22, 16:11, 18:2, 19:14, 45:23
**million** [1] - 39:21
**mind** [1] - 15:12
**minimum** [1] - 12:14
**Minnesota** [1] - 18:5
**minute** [2] - 9:3, 54:2
**minutes** [1] - 54:6
**mirrors** [1] - 32:9
**misbrand** [3] - 36:25, 42:8, 42:25
**misbranded** [21] - 25:6, 25:8, 25:10, 30:13, 36:23, 41:1, 42:9, 42:19, 42:25, 44:24, 45:2, 45:3, 45:7, 48:12, 48:17, 48:21, 48:22, 48:23, 50:20, 50:21, 50:23
**misbranding** [5] - 40:22, 49:3, 50:7, 50:9, 50:10
**misbrands** [2] - 50:14, 50:16
**mislabeled** [1] - 45:13
**mislabeling** [1] - 45:13
**misleading** [12] - 12:3, 13:2, 14:17, 14:19, 16:19, 19:4, 25:7, 30:13, 44:4, 50:6, 52:18, 52:25
**misrepresentation** [2] - 37:11, 37:12
**Missouri** [1] - 9:19
**mom** [3] - 34:4, 34:15, 34:16
**moment** [1] - 14:11
**moreover** [1] - 22:1
**morning** [8] - 3:7, 3:8, 3:9, 4:2, 4:11, 5:17, 5:20, 5:21
**most** [1] - 22:18
**MOTION** [1] - 1:12
**motion** [14] - 3:24, 3:25, 4:19, 5:4, 5:6, 5:13, 5:24, 10:23, 23:12, 43:5, 43:11, 45:22, 53:25
**motions** [3] - 3:22, 4:5, 4:12
**motive** [1] - 15:12
**Mountain** [1] - 1:25
**mouth** [1] - 51:11
**MR** [92] - 3:8, 3:9, 3:12, 3:15, 3:17, 3:20, 3:21, 4:15, 4:17, 5:15, 7:8, 10:3, 10:14, 10:21, 10:24, 11:6, 11:12, 11:17,

11:20, 11:23, 12:25, 13:7, 13:15, 14:5, 15:18, 16:17, 17:17, 18:16, 19:23, 20:25, 22:10, 22:15, 23:8, 23:10, 23:15, 24:3, 24:17, 25:3, 26:4, 26:8, 26:24, 27:7, 27:11, 27:18, 28:12, 28:23, 28:25, 29:21, 30:11, 31:1, 31:6, 31:19, 32:4, 32:12, 33:3, 33:19, 33:22, 33:25, 34:16, 35:16, 36:22, 37:3, 37:7, 37:12, 38:5, 38:9, 38:17, 39:1, 39:20, 40:2, 40:6, 40:13, 41:11, 42:1, 43:23, 44:2, 45:23, 46:5, 46:9, 46:15, 46:20, 47:19, 48:7, 48:10, 49:1, 49:25, 50:5, 51:5, 51:9, 51:13, 53:20, 53:23
**MS** [2] - 5:19, 5:21
**multiple** [5] - 10:11, 10:13, 12:21, 31:25
**must** [4] - 11:15, 15:10, 17:19, 21:22
**Myers** [5] - 44:21, 48:10, 49:1, 50:1, 51:14

**N**

**names** [1] - 46:12
**natural** [140] - 7:22, 7:23, 8:1, 8:20, 8:23, 8:25, 9:4, 9:6, 10:10, 10:16, 10:17, 11:2, 11:5, 11:7, 11:8, 11:9, 11:13, 11:17, 11:25, 12:3, 12:5, 12:9, 12:22, 12:23, 13:11, 14:4, 14:6, 14:17, 15:20, 16:2, 16:3, 16:16, 16:20, 16:21, 16:23, 17:25, 18:5, 18:20, 19:7, 19:17, 20:2, 20:18, 21:24, 22:3, 24:11, 25:10, 25:11, 25:14, 25:17, 25:18, 25:21, 27:11, 27:13, 27:14, 27:15, 27:19, 27:21, 27:22, 27:24, 28:1, 28:5, 28:15, 28:21, 29:4, 29:5, 29:8, 29:15, 29:16, 29:21, 29:24, 29:25, 30:1,

30:7, 30:10, 30:16, 30:20, 31:13, 31:15, 31:18, 31:21, 32:14, 32:15, 32:24, 33:8, 33:16, 34:14, 34:17, 34:19, 34:22, 35:22, 35:23, 36:1, 36:3, 36:6, 36:9, 36:10, 36:24, 37:13, 37:15, 37:22, 38:10, 38:14, 38:20, 38:21, 39:2, 39:14, 39:15, 39:22, 39:23, 40:14, 40:15, 40:16, 40:17, 40:18, 41:9, 41:14, 41:15, 41:19, 42:7, 42:14, 42:22, 42:23, 44:6, 44:7, 44:13, 44:14, 45:12, 50:13, 52:18, 52:25, 53:15, 53:18
**naturally** [3] - 14:12, 37:16, 38:25
**nature** [6] - 14:9, 15:7, 25:1, 44:8, 45:24, 46:7
**necessarily** [1] - 24:20
**necessary** [2] - 21:8, 21:17
**need** [12] - 6:13, 6:15, 6:23, 7:15, 9:21, 15:2, 15:12, 18:25, 19:2, 19:14, 38:13, 48:1
**negligence** [7] - 22:15, 22:16, 22:20, 37:23, 37:24, 38:3, 38:24
**net** [1] - 50:3
**never** [5] - 8:24, 16:25, 19:7, 31:17, 53:9
**nevertheless** [1] - 26:2
**next** [2] - 40:19, 42:24
**nine** [1] - 52:14
**NO** [1] - 1:5
**nobody** [1] - 36:8
**non** [1] - 49:16
**noncompliance** [1] - 49:16
**nonetheless** [1] - 23:24
**nonliteral** [2] - 10:18, 17:10
**normally** [1] - 13:22
**note** [1] - 7:9
**nothing** [3] - 7:25, 13:20, 48:15
**notion** [4] - 18:10, 32:7, 38:2, 49:14
**notions** [1] - 39:10

**November** [1] - 52:4
**number** [3] - 3:4, 16:24, 17:2
**numerous** [1] - 7:18

## O

**obviously** [2] - 21:3, 46:12
**occur** [2] - 14:12, 15:7
**occurring** [2] - 14:8, 38:25
**odd** [2] - 28:19, 28:24
**OF** [6] - 1:1, 1:4, 1:11, 2:2, 2:11, 55:1
**OFFICIAL** [1] - 55:1
**Official** [3] - 1:24, 55:3, 55:17
**ON** [4] - 1:3, 1:12, 2:2, 2:11
**once** [7] - 36:23, 36:24, 38:10, 38:20, 41:1, 42:8
**one** [12] - 7:24, 10:13, 11:3, 11:4, 16:25, 17:11, 21:22, 34:24, 36:20, 40:4, 40:10, 50:19
**open** [1] - 49:20
**operations** [1] - 39:21
**opinion** [2] - 6:6, 21:20
**opportunities** [1] - 31:24
**opportunity** [1] - 50:12
**opposed** [3] - 26:7, 26:22, 27:16
**orange** [4] - 26:12, 26:16, 33:17, 33:18
**orange-flavored** [2] - 26:16, 33:17
**oranges** [2] - 33:7, 37:16
**order** [1] - 52:4
**ordinary** [1] - 51:19
**organic** [17] - 28:9, 28:13, 28:14, 28:15, 28:17, 28:20, 29:1, 29:2, 29:3, 29:8, 29:11, 29:23, 53:5, 53:7, 53:8, 53:11, 53:16
**organically** [1] - 29:6
**OTHERS** [1] - 1:4
**otherwise** [1] - 24:14
**ought** [1] - 36:8
**outside** [1] - 14:10
**owed** [1] - 22:21
**own** [2] - 14:11, 27:7

## P

**package** [1] - 10:5
**PACKAGED** [1] - 1:7
**packaged** [3] - 3:3, 35:12, 35:14
**packages** [1] - 37:10
**packaging** [4] - 19:12, 21:23, 26:21, 35:5
**packed** [3] - 33:23, 39:12, 41:8
**page** [1] - 55:9
**panel** [2] - 26:3, 38:16
**pantry** [1] - 35:14
**papers** [1] - 31:12
**Parkway** [1] - 2:4
**part** [2] - 26:20, 43:5
**participate** [1] - 4:9
**particular** [7] - 25:7, 30:14, 36:14, 44:5, 44:15, 49:5, 50:7
**particularity** [2] - 7:13, 15:10
**parties** [4] - 6:3, 21:14, 46:12, 47:17
**partner** [1] - 52:7
**parts** [1] - 9:15
**party** [1] - 15:10
**past** [2] - 35:18, 51:24
**patterned** [1] - 47:15
**pay** [1] - 16:11
**paying** [1] - 16:15
**peaches** [9] - 26:9, 34:7, 34:11, 34:13, 34:15, 49:20, 49:21, 49:23, 49:24
**peculiarly** [1] - 47:22
**Pekron** [7] - 2:12, 3:14, 4:7, 6:22, 23:7, 36:14, 51:7
**PEKRON** [32] - 3:15, 3:21, 4:15, 4:17, 5:15, 7:8, 10:3, 10:14, 10:21, 10:24, 11:6, 11:12, 11:17, 11:20, 11:23, 12:25, 13:7, 13:15, 14:5, 15:18, 16:17, 17:17, 18:16, 19:23, 20:25, 22:10, 22:15, 23:8, 51:9, 51:13, 53:20, 53:23
**pending** [1] - 3:23
**people** [3] - 16:4, 27:25, 40:14
**pepper** [1] - 30:16
**per** [2] - 22:16, 37:24
**perceive** [1] - 19:20
**percent** [6] - 11:11, 11:22, 12:1, 27:2,
33:13, 33:16
**perhaps** [1] - 4:9
**person** [4] - 19:15, 19:20, 19:22, 20:1
**personal** [1] - 27:7
**pertain** [1] - 47:21
**pertaining** [1] - 45:25
**pesticides** [2] - 29:2, 53:8
**Phone** [3] - 2:5, 2:9, 2:14
**pick** [1] - 9:15
**picked** [1] - 34:13
**pine** [1] - 33:22
**pineapple** [25] - 26:17, 26:23, 33:21, 33:23, 33:25, 35:2, 35:4, 39:12, 39:13, 39:14, 39:15, 40:1, 40:4, 40:9, 40:11, 41:7, 41:8, 41:10, 41:13, 42:2
**pineapple-flavored** [4] - 26:17, 26:23, 39:13, 40:11
**pineapples** [3] - 49:20, 49:23, 49:24
**Pinnacle** [1] - 2:4
**placed** [1] - 28:20
**PLAINTIFF** [1] - 2:2
**Plaintiff** [1] - 1:5
**plaintiff** [6] - 3:4, 10:15, 18:25, 21:9, 21:16, 45:15
**plaintiff's** [2] - 12:12, 13:1
**plaintiffs** [5] - 7:18, 7:22, 9:14, 18:6, 53:13
**plan** [1] - 16:14
**planning** [2] - 4:18, 4:20
**plastic** [2] - 35:2, 35:5
**plausibility** [4] - 6:19, 7:3, 7:20, 47:17
**plausible** [14] - 9:7, 13:6, 13:8, 18:18, 19:3, 19:12, 19:21, 19:25, 20:21, 43:9, 43:17, 45:17, 47:11, 47:13
**plausibly** [1] - 9:4
**playing** [1] - 36:9
**plead** [2] - 15:4, 17:20
**pleaded** [11] - 7:13, 16:5, 19:24, 19:25, 21:3, 21:6, 21:8, 22:12, 22:19, 22:20, 22:21
**pleading** [9] - 6:20,
7:4, 7:10, 12:15, 17:15, 25:4, 43:7, 44:15, 45:21
**pleadings** [8] - 3:25, 4:20, 4:23, 5:25, 12:24, 14:11, 43:6, 54:1
**PLEADINGS** [1] - 1:12
**pleasing** [1] - 36:4
**pleasure** [1] - 3:18
**pled** [3] - 24:20, 25:9, 45:17
**PLLC** [2] - 2:3, 2:13
**podium** [1] - 7:7
**point** [4] - 32:2, 36:15, 36:17, 41:7
**pointed** [1] - 13:12
**points** [1] - 21:2
**policy** [1] - 53:12
**position** [4] - 15:15, 32:15, 35:15, 41:3
**possess** [2] - 42:10, 49:8
**possessed** [2] - 43:1, 49:11
**possible** [1] - 7:24
**possibly** [2] - 15:22, 46:8
**pot** [1] - 34:6
**powder** [1] - 33:12
**Practices** [1] - 6:7
**pre** [1] - 29:9
**preemption** [2] - 6:5, 31:3
**prefer** [1] - 7:6
**premise** [1] - 23:11
**premised** [1] - 32:8
**premium** [7] - 16:11, 27:5, 28:18, 28:21, 39:16, 40:5, 40:10
**presence** [1] - 17:4
**present** [1] - 50:12
**preservative** [9] - 27:20, 28:2, 28:6, 28:11, 29:10, 31:15, 31:22, 39:4, 50:16
**preservatives** [13] - 27:12, 27:24, 30:2, 30:17, 30:23, 33:14, 34:1, 35:23, 36:3, 36:7, 41:22, 41:25, 42:3
**preserve** [7] - 25:19, 32:16, 32:20, 34:1, 41:17, 42:5
**preserving** [1] - 34:11
**pretty** [1] - 28:18
**previously** [1] - 51:22
**price** [4] - 39:16, 40:5, 40:20, 42:15

**print** [3] - 9:24, 10:1, 41:24
**problem** [5] - 8:14, 8:15, 8:22, 18:15, 20:10
**Proceedings** [2] - 1:22, 54:7
**proceedings** [2] - 12:19, 55:8
**processed** [1] - 35:12
**product** [88] - 7:25, 8:6, 8:7, 8:23, 9:11, 9:12, 9:22, 10:17, 13:18, 13:19, 13:22, 14:9, 16:11, 16:12, 16:16, 17:3, 17:8, 17:11, 19:9, 20:3, 20:7, 20:10, 21:13, 22:24, 24:10, 24:13, 25:6, 25:10, 25:14, 25:20, 27:17, 28:1, 30:9, 31:13, 32:13, 33:10, 34:2, 34:19, 34:21, 35:13, 36:2, 36:20, 36:23, 37:19, 37:20, 38:10, 38:12, 39:17, 39:22, 40:3, 40:8, 40:11, 40:13, 40:14, 40:19, 40:22, 40:23, 40:24, 41:1, 41:2, 41:4, 41:5, 41:23, 42:6, 42:8, 42:9, 42:12, 42:19, 43:2, 44:5, 44:25, 45:7, 45:13, 46:25, 48:12, 48:19, 49:5, 49:7, 50:8, 50:14, 50:16, 50:20, 50:21, 51:18, 53:15, 53:16, 53:18
**product's** [1] - 19:7
**products** [29] - 3:3, 8:11, 13:21, 14:2, 14:6, 15:21, 26:6, 26:18, 26:19, 27:4, 27:5, 27:17, 28:9, 29:1, 29:20, 30:24, 35:18, 36:6, 44:6, 44:9, 47:2, 47:6, 50:13, 52:14, 52:17, 52:19, 52:22, 53:7, 53:11
**profits** [1] - 42:16
**progress** [1] - 5:2
**prominently** [1] - 10:1
**promulgate** [1] - 32:1
**promulgated** [1] - 30:7
**prove** [1] - 19:19
**provide** [1] - 52:8

**provided** [3] - 13:10, 13:20, 45:5
**provisions** [2] - 6:9, 23:17
**proximate** [1] - 38:4
**pumped** [1] - 34:1
**purchased** [4] - 21:12, 21:14, 21:15, 24:13
**purpose** [4] - 22:13, 29:22, 49:5, 51:19
**purposes** [4] - 4:11, 5:13, 26:25, 44:15
**pursuant** [2] - 6:20, 55:6
**pursued** [1] - 46:24
**pursuing** [1] - 47:18
**put** [35] - 10:4, 16:8, 19:18, 20:16, 22:23, 25:18, 28:8, 28:17, 28:21, 28:25, 29:9, 29:21, 29:25, 30:2, 30:17, 30:18, 30:22, 32:17, 33:6, 33:14, 34:8, 36:1, 36:6, 37:18, 37:19, 38:11, 39:11, 41:4, 41:16, 41:20, 42:9, 44:12, 47:17
**putting** [2] - 36:24, 39:5

## Q

**Quattlebaum** [1] - 2:13
**quickly** [1] - 52:1
**quote/unquote** [1] - 31:18
**quoting** [1] - 17:23

## R

**rather** [1] - 5:4
**reached** [1] - 22:22
**react** [1] - 12:22
**read** [14] - 5:12, 6:23, 10:16, 17:6, 17:8, 18:19, 19:14, 19:15, 19:17, 19:22, 20:1, 20:17, 21:22, 21:24
**reading** [4] - 20:18, 20:20, 52:15, 53:21
**ready** [1] - 51:10
**real** [35] - 26:6, 26:14, 26:15, 26:22, 26:24, 27:4, 27:16, 28:9, 28:10, 33:23, 39:12, 39:13, 39:14, 39:15, 39:24, 39:25, 40:5, 40:9, 41:7, 41:8,

41:9, 41:12, 41:13, 41:23, 41:24, 42:2, 46:16, 49:22
**really** [11] - 8:14, 8:15, 9:24, 11:7, 26:13, 30:21, 33:4, 33:11, 47:6, 48:1, 48:2
**Realtime** [1] - 55:3
**realtime** [1] - 1:22
**reason** [6] - 9:18, 9:20, 12:9, 22:8, 48:23, 50:11
**reasonable** [13] - 11:3, 12:16, 13:3, 19:15, 19:20, 19:22, 20:1, 20:16, 24:12, 29:19, 52:25, 53:14, 53:17
**reasonably** [1] - 27:5
**reasons** [5] - 7:18, 22:12, 23:2, 23:3, 52:5
**received** [1] - 18:6
**recent** [1] - 3:11
**recently** [1] - 35:11
**recess** [1] - 54:6
**recessed** [1] - 54:7
**recognize** [2] - 21:4, 32:1
**recognized** [3] - 13:16, 38:1, 51:22
**reconvene** [1] - 54:2
**record** [1] - 14:7
**recorded** [1] - 1:22
**recovery** [1] - 45:15
**refer** [2] - 25:25, 31:4
**referenced** [1] - 13:14
**regard** [4] - 24:18, 25:3, 43:24, 44:2
**regarding** [2] - 7:17, 45:25
**regulation** [1] - 45:5
**regulations** [9] - 13:16, 13:18, 29:7, 31:8, 31:9, 31:11, 32:9, 48:18, 55:10
**reinvent** [1] - 6:24
**rejects** [1] - 22:16
**relates** [1] - 6:18
**relevant** [1] - 53:12
**reliance** [2] - 24:19, 24:23
**relied** [2] - 24:10, 52:3
**relief** [1] - 18:18
**relies** [1] - 37:1
**rely** [1] - 12:6
**relying** [1] - 24:12
**remedies** [1] - 24:22
**renders** [1] - 49:18
**repeatedly** [1] - 12:4
**reported** [1] - 55:8

**Reporter** [1] - 1:24, 55:4, 55:17
**REPORTER** [1] - 55:1
**represent** [1] - 11:19
**representation** [3] - 24:10, 24:11, 45:12
**representative** [1] - 35:9
**represented** [3] - 3:5, 3:13, 9:6
**require** [3] - 18:24, 19:11, 24:23
**required** [1] - 38:23
**requirement** [3] - 17:16, 48:18, 50:4
**requirements** [4] - 12:15, 25:4, 43:7, 43:14
**respect** [3] - 4:19, 6:5, 6:6
**respects** [1] - 4:4
**respond** [1] - 51:7
**response** [1] - 43:10
**restrictive** [1] - 31:5
**ripe** [1] - 3:23
**RMR** [2] - 1:24, 55:17
**Robert** [1] - 2:12
**Rock** [2] - 2:8, 2:14
**Rogers** [1] - 2:4
**rule** [1] - 5:3
**Rule** [16] - 6:21, 7:4, 7:10, 13:1, 14:16, 15:4, 17:9, 17:17, 18:1, 18:14, 20:21, 43:7, 43:14, 44:20, 45:19
**rules** [1] - 28:12
**ruling** [1] - 23:16
**rulings** [4] - 6:5, 6:11, 21:4, 52:3
**Ryan** [2] - 2:12, 3:16
ryounger@qgtb.com [1] - 2:16

## S

**Safe** [1] - 6:9
**Safeway** [1] - 40:16
**sale** [2] - 44:24, 48:11
**sales** [1] - 36:16
**salt** [1] - 30:16
**satisfies** [1] - 20:21
**satisfy** [3] - 15:22, 21:9, 44:20
**satisfying** [1] - 25:4
**Scarbrough** [1] - 44:16
**scrutiny** [3] - 6:19, 17:18, 45:18
**se** [2] - 22:16, 37:24

**sealed** [2] - 25:16, 35:6
**seated** [1] - 5:22
**second** [4] - 3:25, 15:9, 30:5, 39:10
**secondly** [1] - 26:5
**Section** [1] - 55:6
**seeking** [1] - 18:14
**seem** [1] - 28:24
**sell** [8] - 34:19, 34:21, 36:4, 39:21, 42:10, 42:13, 42:20, 49:8
**selling** [2] - 33:21, 50:13
**sells** [1] - 30:24
**sense** [5] - 5:4, 5:7, 24:4, 27:15, 38:3
**sent** [1] - 31:20
**separate** [2] - 19:23, 49:19
**September** [1] - 55:12
**set** [6] - 4:4, 5:6, 30:5, 37:5, 37:8, 39:8
**several** [3] - 3:1, 31:24, 45:14
**sharper** [1] - 6:17
**shelf** [5] - 30:19, 35:7, 35:13, 40:25, 42:9
**SHEMIN** [2] - 3:8, 3:12
**Shemin** [4] - 2:3, 2:3, 3:6, 3:10
**shift** [1] - 43:3
**shop** [2] - 34:23, 35:9
**shorthand** [1] - 1:22
**shotgun** [1] - 46:25
**show** [3] - 7:15, 19:15, 20:15
**side** [7] - 30:5, 34:24, 35:1, 37:6, 37:8, 39:10, 41:21
**similar** [5] - 3:1, 4:4, 31:9, 46:22, 52:12
**similarities** [2] - 4:13, 5:10
**SIMILARLY** [1] - 1:4
**simplest** [1] - 45:10
**simply** [2] - 12:17, 18:1
**sit** [1] - 7:6
**sitting** [1] - 36:2
**SITUATED** [1] - 1:4
**situation** [1] - 50:5
**situations** [1] - 50:19
**sold** [7] - 35:12, 40:13, 42:14, 42:16, 43:1, 49:10
**soluble** [1] - 34:9
**somewhat** [1] - 37:24
**sort** [3] - 26:13, 45:20, 49:15

**sought** [1] - 43:11
**sounding** [1] - 18:2
**specific** [6] - 9:16, 21:1, 22:4, 36:13, 47:2, 53:6
**specifically** [2] - 6:25, 17:4
**specifications** [1] - 22:1
**specify** [1] - 18:6
**spend** [1] - 6:13
**spent** [1] - 43:23
**SPIVEY** [2] - 5:19, 5:21
**squarely** [1] - 31:25
**squeezed** [1] - 33:7
**stage** [4] - 10:23, 12:13, 12:18, 19:20
**standard** [8] - 7:4, 7:11, 9:8, 17:15, 38:22, 39:1, 39:5, 51:25
**standing** [2] - 12:6, 12:8
**start** [2] - 5:24, 23:11
**state** [13] - 7:1, 13:1, 13:6, 13:8, 13:18, 13:20, 13:25, 15:5, 15:10, 15:11, 15:12, 18:18, 20:10
**statement** [7] - 9:8, 11:24, 11:25, 12:2, 15:20, 18:19, 52:17
**statements** [1] - 37:10
**STATES** [1] - 1:1
**States** [3] - 55:4, 55:6, 55:11
**statute** [8] - 21:21, 22:17, 30:12, 31:3, 32:8, 37:2, 37:3, 49:17
**statutes** [1] - 25:5
**statutory** [2] - 25:8, 49:15
**stay** [1] - 4:8
**steer** [1] - 5:12
**stenographically** [1] - 55:8
**step** [1] - 42:24
**sterilize** [1] - 34:6
**still** [4] - 16:18, 29:8, 30:20, 37:1
**store** [3] - 26:12, 34:5, 34:25
**Street** [3] - 1:25, 2:8, 2:13
**structure** [1] - 42:17
**stuff** [3] - 25:18, 28:2, 34:7
**subject** [2] - 10:11,

49:10
**subjective** [1] - 29:16
**subsequent** [1] - 12:18
**substance** [1] - 34:9
**succinctly** [1] - 7:1
**sued** [1] - 52:13
**sufficient** [2] - 23:22, 44:20
**suggesting** [2] - 35:8, 35:10
**suggests** [1] - 38:23
**Suite** [2] - 2:4, 2:13
**summary** [3] - 52:9, 52:13, 52:15
**superior** [1] - 41:5
**Supreme** [2] - 51:15, 51:20
**synthetic** [34] - 13:18, 14:4, 15:2, 15:3, 18:2, 25:12, 25:20, 25:24, 26:1, 27:20, 28:1, 28:6, 29:9, 30:1, 31:14, 31:22, 32:23, 33:5, 34:1, 37:18, 37:20, 38:11, 38:18, 38:24, 39:3, 39:6, 41:16, 42:4, 42:23, 44:8, 44:10, 45:24, 50:15, 52:21
**synthetically** [1] - 33:9
**syrup** [1] - 45:4

## T

**table** [1] - 7:5
**taste** [1] - 49:21
**technical** [2] - 49:17, 50:4
**technicality** [2] - 50:8, 50:17
**template** [1] - 46:19
**ten** [8] - 30:18, 30:19, 52:14, 52:16, 52:19, 54:2, 54:6
**ten-minute** [1] - 54:2
**term** [7] - 11:2, 11:4, 12:10, 12:22, 13:2, 13:10, 16:3
**terminology** [1] - 16:9
**terms** [6] - 12:5, 18:11, 29:17, 29:19, 37:9
**THE** [96] - 1:12, 1:13, 2:2, 2:11, 3:1, 3:10, 3:13, 3:16, 3:18, 3:22, 4:16, 5:1, 5:18, 5:20, 5:22, 9:23, 10:12, 10:19, 10:22,

10:25, 11:10, 11:15, 11:19, 11:21, 12:11, 13:4, 13:12, 14:3, 15:8, 16:8, 17:12, 18:9, 19:19, 20:23, 22:9, 22:14, 23:6, 23:11, 23:19, 24:8, 25:2, 25:22, 26:5, 26:11, 27:3, 27:9, 27:14, 28:8, 28:16, 28:24, 29:11, 30:4, 30:24, 31:2, 31:16, 31:24, 32:6, 32:25, 33:17, 33:20, 33:23, 34:3, 34:23, 36:12, 37:1, 37:5, 37:8, 37:23, 38:7, 38:15, 38:22, 39:7, 39:24, 40:3, 40:7, 41:3, 41:20, 43:3, 44:1, 45:8, 46:2, 46:6, 46:10, 46:18, 47:8, 48:4, 48:9, 48:25, 49:14, 50:2, 51:2, 51:6, 51:12, 53:19, 53:21, 53:24
**themselves** [1] - 44:19
**theories** [2] - 23:24, 45:14
**theory** [7] - 37:23, 37:25, 39:8, 42:18, 45:11, 46:6, 52:8
**therefore** [3] - 24:14, 45:14, 50:22
**they've** [13] - 8:23, 11:24, 12:2, 13:20, 16:25, 19:7, 21:6, 21:16, 31:17, 31:20, 35:1, 35:23, 36:24
**thinking** [2] - 43:24, 47:20
**third** [1] - 21:14
**Thomas** [1] - 2:7
**thoughts** [1] - 38:1
**THRASH** [56] - 3:9, 23:10, 23:15, 24:3, 24:17, 25:3, 26:4, 26:8, 26:24, 27:7, 27:11, 27:18, 28:12, 28:23, 28:25, 29:21, 30:11, 31:1, 31:6, 31:19, 32:4, 32:12, 33:3, 33:19, 33:22, 33:25, 34:16, 35:16, 36:22, 37:3, 37:7, 37:12, 38:5, 38:9, 38:17, 39:1, 39:20, 40:2, 40:6, 40:13, 41:11, 42:1, 43:23, 44:2, 45:23, 46:5,

46:9, 46:15, 46:20, 47:19, 48:7, 48:10, 49:1, 49:25, 50:5, 51:5
**Thrash** [3] - 2:7, 2:7, 3:5
**thrash** [4] - 4:18, 23:9, 43:4, 51:6
**three** [4] - 4:10, 6:2, 24:24, 54:5
**threshold** [3] - 5:3, 5:13, 25:24
**TIMOTHY** [1] - 1:13
**Title** [1] - 55:6
**today** [9] - 3:2, 3:19, 5:2, 5:6, 5:14, 6:1, 28:7, 45:19, 54:5
**Tom** [1] - 3:5
**tomatoes** [1] - 32:22
**tomthrash@ sbcglobal.net** [1] - 2:10
**town** [1] - 34:24
**Trade** [1] - 6:7
**traditional** [1] - 38:2
**TRANSCRIPT** [1] - 1:11
**transcript** [2] - 55:7, 55:9
**tree** [1] - 34:14
**true** [6] - 9:9, 19:5, 27:9, 28:19, 46:10, 55:7
**trump** [1] - 22:2
**trumps** [1] - 22:6
**truth** [1] - 40:25
**try** [3] - 6:1, 6:25
**trying** [2] - 5:1, 12:12
**Tull** [1] - 2:13
**turn** [3] - 5:9, 7:19, 8:7
**two** [6] - 3:22, 4:3, 6:2, 17:2, 19:24, 52:3
**Twombly** [7] - 17:15, 18:15, 18:17, 18:24, 19:11, 43:15, 43:20
**type** [3] - 17:15, 18:15, 26:10

## U

**ultimately** [1] - 52:23
**under** [27] - 6:21, 7:10, 13:1, 14:16, 15:4, 17:9, 18:1, 21:11, 21:22, 24:21, 24:22, 25:5, 25:8, 28:12, 29:24, 30:11, 38:1, 42:18, 44:11, 45:14, 49:12, 53:12, 54:1
**underlying** [1] - 7:16

**underweight** [1] - 48:22
**unfit** [1] - 22:12
**unhealthy** [1] - 20:8
**United** [3] - 55:4, 55:6, 55:11
**UNITED** [1] - 1:1
**unjust** [11] - 21:7, 21:9, 21:17, 23:17, 24:6, 24:22, 39:7, 42:11, 42:15, 42:18
**unjustly** [2] - 39:11, 39:18, 40:12
**unless** [1] - 11:14
**unmarketable** [1] - 41:2
**unmerchantable** [5] - 48:23, 49:6, 49:7, 49:11, 50:21
**unnatural** [9] - 14:15, 14:21, 14:24, 15:1, 16:22, 16:25, 17:3, 18:3, 32:17
**unquestionably** [1] - 9:9
**up** [6] - 19:18, 34:3, 43:15, 44:18, 49:20, 52:2
**uses** [2] - 23:20, 23:21
**utilize** [1] - 44:17

## V

**vague** [1] - 17:22
**value** [8] - 42:10, 42:12, 42:14, 42:20, 43:2, 49:7, 50:10, 50:22
**various** [1] - 23:24
**vegetables** [1] - 35:1
**versus** [9] - 3:3, 4:6, 11:8, 12:15, 35:12, 44:21, 48:10, 49:1
**via** [1] - 1:22
**viable** [1] - 52:8
**victory** [1] - 3:11
**view** [1] - 45:9
**violated** [3] - 22:17, 42:14, 49:4
**vis** [6] - 27:5, 40:3, 40:11
**vis-a-vis** [3] - 27:5, 40:3, 40:11
**Vitamin** [2] - 14:8, 52:20
**VS** [1] - 1:6

## W

**wants** [1] - 4:24

**warning** [1] - 31:20
**warranties** [5] - 21:21, 22:5, 23:18, 37:9
**warranty** [20] - 21:19, 22:7, 22:9, 22:10, 22:11, 24:6, 24:18, 24:19, 36:14, 36:19, 37:21, 44:23, 45:1, 48:8, 49:4, 49:13, 50:23, 51:14, 51:16, 51:24
**water** [5] - 33:13, 33:14, 34:6, 39:25, 40:11
**waterfront** [1] - 45:9
**ways** [1] - 12:21
**weight** [7] - 45:6, 45:7, 48:17, 50:4, 50:8, 50:9, 50:17
**welcome** [1] - 7:7
**WESTERN** [1] - 1:1
**Western** [2] - 9:19, 55:5
**whatsoever** [1] - 47:11
**wheel** [1] - 6:24
**whereby** [1] - 17:14
**whole** [3] - 5:7, 17:3, 49:18
**wholesale** [1] - 42:15
**withheld** [1] - 8:16
**word** [4] - 10:10, 16:2, 28:17, 51:10
**words** [3] - 26:11, 29:18, 41:6
**world** [1] - 39:18
**worth** [4] - 29:23, 29:24, 42:11
**worthless** [2] - 45:13, 49:18

## Y

**year** [1] - 52:5
**years** [2] - 30:19
**Younger** [1] - 2:12
**younger** [2] - 3:16, 4:7
**YOUNGER** [2] - 3:17, 3:20